FREEMAN UNITED COAL MINING COMPANY, a/k/a Freeman United Coal, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Edward Sisk, Appellee).

Fifth District (Industrial Commission Division)    No. 5—00—0132WC

Opinion filed December 27, 2000.—Rehearing denied January 23, 2001.

Dennis S. O'Brien, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

William Lemp, of Lemp & Anthony, P.C., of St. Louis, Missouri, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent employer Freeman United Coal Mining Company appeals from an order of the circuit court of Christian County affirming in part and reversing in part a decision of the Illinois Industrial Commission (Commission). The arbitrator awarded claimant Edward Sisk $569.29 per week for 110³/₇ weeks (to the date of the arbitration hearing, August 21, 1998) for temporary total disability (TTD) (820 ILCS 305/8(b) (West 1998)). The Commission modified the duration of TTD to 108³/₇ weeks and otherwise affirmed and adopted the arbitrator's decision. The circuit court, while reversing the Commission's finding of a causal relationship between claimant's current back condition and the October 23, 1995, accident, nevertheless upheld the TTD award based on the causal connection between the January 9, 1995, and October 23, 1995, accidental injuries and the current condition of claimant's knees. No issue is raised in this appeal concerning claimant's back condition.

The issues are whether the following Commission findings were against the manifest weight of the evidence: (1) a causal connection existed between claimant's left knee condition and the accident of October 23, 1995; (2) a causal connection existed between claimant's right knee condition and the accidents of January 9 and October 23, 1995; and (3) the duration of TTD. We affirm.

"The claimant's injury need not be the sole factor that aggravates a preexisting condition, so long as it is a factor that contributes to the disability. [Citations.] In addition, the question of whether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation of a preexisting condition, is a question of fact to be decided by the Industrial Commission." *Caterpillar Tractor Co. v. Industrial Comm'n*, 92 Ill. 2d 30, 36-37, 440 N.E.2d 861, 864 (1982).

The test for determining whether a factual finding of the Commission is against the manifest weight of the evidence "is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination." *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995). The relevant inquiry is whether the evidence supports an inference that

the accident aggravated the condition or accelerated the processes that led to claimant's current condition of ill-being. *Mason & Dixon Lines, Inc. v. Industrial Comm'n*, 99 Ill. 2d 174, 181-82, 457 N.E.2d 1222, 1226 (1983). A medical expert's opinion that the current condition could or might have been caused by the accident may be used by the Commission to support a finding of a causal relationship. *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 332, 633 N.E.2d 1344, 1349 (1994). When faced with conflicting medical testimony as to causation, it is the province of the Commission to evaluate that testimony. *International Harvester Co. v. Industrial Comm'n*, 46 Ill. 2d 238, 244, 263 N.E.2d 49, 53 (1970); *Tee-Pak, Inc. v. Industrial Comm'n*, 141 Ill. App. 3d 520, 526, 490 N.E.2d 170, 175 (1986).

■ Respondent initially challenges the finding of causation as to the left knee injury as a result of the October 23, 1995, accident. Respondent attempts to show that claimant did not complain about the left knee for some time after the accident. On October 25, 1995, Dr. Scott Kline saw claimant, and claimant said he hurt *both* knees on October 23, 1995. Kline diagnosed an acute medial collateral ligament sprain in both knees. The record shows on November 9, 1995, claimant was seen by Kline for follow-up for the work injury involving both knees and his back. Kline did not recommend surgery to the left knee at that time, indicating, "Hopefully his knees will settle down." Respondent also relies on Dr. Z.J. Asali's May 2, 1996, note in which claimant complained of right knee and low-back pain. Asali is claimant's family physician. The back condition was of preeminent concern to claimant at that visit and was the major focus of the doctor's note.

Respondent states that claimant was not complaining about the left knee when he saw respondent's evaluating physician, Dr. James Strickland. In Strickland's first report (June 18, 1996), claimant said he fell on both knees and he saw Kline for his knee problems, which had improved, but his knees were still causing considerable aching and pain. Strickland noted that claimant only had an injection in the right knee. The remainder of the report concerns the back condition. Strickland's March 28, 1996, report says that claimant twisted both knees, but the accident affected the right knee more. The report focused on the right knee. There is nothing in these reports that says claimant had no pain in the left knee.

Dr. Richard Morgan, who performed surgeries on claimant's knees, diagnosed the left knee meniscus tear and surgically corrected it. He did testify to a causal relationship. Respondent argues that Morgan improperly relied on claimant's history that the left knee remained

painful from the date of the accident until he first saw Morgan on June 20, 1996. Morgan testified that, if the history was incomplete or inaccurate, he could change his opinion.

The Commission's finding of a causal connection between claimant's left knee condition and the October 23, 1995, accident was not against the manifest weight of the evidence.

■ The next issue is whether the Commission's finding of a causal connection between claimant's right knee condition and the accidents of January 9 and October 23, 1995, was against the manifest weight of the evidence. All doctors involved in this case acknowledged considerable significant right knee problems prior to both accidents. Respondent argues that this is a case in which everyday activities could be an overexertion that would make claimant's right knee symptomatic. This is not a case involving a "normal degenerative aging process." Claimant had degenerative changes following multiple prior work-related right knee injuries and continued to work for respondent. Between 1992 and January 9, 1995, claimant worked for respondent without any problems. Following the January 9, 1995, accident, he continued to work for respondent in spite of right knee symptoms until the second, more serious accident on October 23, 1995. On May 23, 1995, claimant saw Asali and complained about injuring his right knee and related a history of hurting it about four months before. On March 8, 1995, claimant told Kline a rock broke off on a belt and smacked him in the lateral leg and claimant complained of pain and stiffness at that time. On October 25, 1995, following the October 23, 1995, accident, claimant complained of injuring both knees. Claimant was asymptomatic before these accidents and symptomatic afterward. The Commission could reasonably find that the accidents aggravated claimant's prior right knee condition. This finding was not against the manifest weight of the evidence.

■ The final issue is whether the Commission's finding as to the duration of TTD was against the manifest weight of the evidence. The time during which a claimant is temporarily totally disabled is a question of fact for the Commission, and to be entitled to TTD, claimant must prove not only that he did not work but that he was unable to work. *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d 1087, 1090, 666 N.E.2d 827, 828-29 (1996). The dispositive test is whether the condition has stabilized, because a claimant is entitled to TTD when a " 'disabling condition is temporary and has not reached a permanent condition.' " *Manis v. Industrial Comm'n*, 230 Ill. App. 3d 657, 660, 595 N.E.2d 158, 160-61 (1992), quoting Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b) (now 820 ILCS 305/19(b) (West 1998)). The Commission reviews the evidence to ascertain whether claimant has

reached maximum medical improvement, *i.e.*, the condition has stabilized. *Beuse v. Industrial Comm'n*, 299 Ill. App. 3d 180, 183, 701 N.E.2d 96, 98 (1998).

The Commission's decision awarded TTD for the periods of October 24, 1995, through December 2, 1996, and September 3, 1997, through August 21, 1998, the date of arbitration. On September 3, 1997, claimant had a second left knee surgery. Respondent concedes claimant was entitled to TTD from October 24, 1995, to August 16, 1996, then disputes entitlement thereafter. Respondent stopped paying TTD on August 16, 1996. Respondent argues that, because there was no causal connection between the left knee injury and the accident of October 23, 1995, claimant was not entitled to TTD from August 16, 1996, to December 2, 1996, and from September 3, 1997, through October 30, 1997. Respondent relies on Morgan's testimony that claimant was off work due to the right knee until August 6, 1996, and due to the left knee thereafter. Because this court upholds the Commission's finding that the left knee injury was causally connected to the October 23, 1995, accident, respondent's argument fails and claimant is entitled to TTD for the period of August 16, 1996, to December 2, 1996, and September 3, 1997, to October 30, 1997. As to the period of October 31, 1997, through August 21, 1998, the respondent argues only that the Commission's decision was contrary to law and against the manifest weight of the evidence. The respondent does not point to any specific evidence or case citation other than that presented with respect to the other time periods.

Claimant worked from December 2, 1996, until he left respondent's employ on June 17, 1997. Morgan performed another surgery on claimant's left knee on September 3, 1997. Respondent argues that claimant was not entitled to TTD after October 30, 1997, because Morgan testified that claimant had recovered from the surgery, and claimant was then in the same condition he had been about a year before. Claimant argues that respondent ignores the fact that Morgan had already testified that the resumption of medical treatment and surgery were related to the work injuries.

Dr. Morgan testified that claimant's medical condition was in the state of improvement during the times TTD was awarded. Respondent argues Dr. Morgan set the maximum medical improvement date as of October 30, 1997. Claimant is correct in arguing that Dr. Morgan testified the resumption of medical treatment was related to the injuries. The trial court, in confirming the Commission, set out a portion of Dr. Morgan's testimony:

"Q. Doctor, within a reasonable degree of medical certainty, as of the date of your last surgery on September 3, 1997, do you feel this man would be temporarily totally disabled from work?

A. Yes, he is.

Q. On what basis?

A. He has debilitating problems, meniscectomy changes in both knees. He has chondromalacia and frank bone on bone deformity in both knees. He's failed an osteochondral graft on the left, and I feel that it's unlikely he'll ever get back into any type of physical work. Ultimately, he'll probably need knee replacements."

The arbitrator's decision, affirmed by the Commission, found that Dr. Morgan, since September 3, 1997, "has not released the claimant to return to any type of work" and that "scheduling has been undertaken for at least a total knee replacement."

■ The Commission's finding that claimant was entitled to TTD after December 2, 1997, was not against the manifest weight of the evidence.

The evidence presented in this case as to the extent of TTD points out the need to clarify the distinction between the elements needed to prove entitlement to TTD as opposed to the evidence necessary to demonstrate that a claimant is entitled to permanent disability and/or fits into the odd-lot category for permanent disability (PD) benefits. For example, in this case, the claimant argues that respondent did not provide vocational rehabilitation, he hired his own vocational expert and tried to find work, and therefore, the Commission's finding on the duration of TTD should be upheld.

■ The frequency of this type of argument appears to stem from the fact that courts, in defining permanent disability, tend to borrow the definition from decisions discussing TTD and PD indiscriminately. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118-23, 561 N.E.2d 623, 627-30 (1990). TTD is awarded for the period from the date on which the employee is incapacitated by injury to the date that his condition stabilizes or he has recovered as far as the character of the injury will permit. *Whitney Productions, Inc. v. Industrial Comm'n*, 274 Ill. App. 3d 28, 30, 653 N.E.2d 965, 967 (1995). To be entitled to TTD benefits, the claimant must prove not only that he did not work but that he was unable to work. *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d at 1090, 666 N.E.2d at 828-29. It does not matter whether he could have looked for work. Even though a claimant may be entitled to permanent disability compensation under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)), once the injured employee's physical condition has stabilized, he is no longer eligible for TTD benefits because the disabling condition has reached a permanent condition. *Manis*, 230 Ill. App. 3d at 660, 595 N.E.2d at 160-61. As this court noted in *Manis*, an argument focusing on whether the claimant is available for work in

some other capacity and could and should have sought alternative employment misses the mark in TTD cases. The dispositive question is whether the claimant's condition had "stabilized." *Manis*, 230 Ill. App. 3d at 660, 595 N.E.2d at 160. In *Beuse*, 299 Ill. App. 3d at 183, 701 N.E.2d at 98, this court discussed when a claimant has "reached maximum medical improvement." The factors to be considered in determining whether a claimant has reached maximum medical improvement include a release to return to work, with restrictions or otherwise, and medical testimony or evidence concerning claimant's injury, the extent thereof, the prognosis, and whether the injury has stabilized. *Beuse*, 299 Ill. App. 3d at 183, 701 N.E.2d at 98. Once an injured claimant has reached maximum medical improvement, the condition is no longer temporary and entitlement to TTD benefits ceases even though the claimant may thereafter be entitled to receive permanent total or partial disability benefits. When a court determines the duration of TTD, the only questions that need to be asked and answered are whether the claimant has yet reached maximum medical improvement and, if so, when.

In *Hayden v. Industrial Comm'n*, 214 Ill. App. 3d 749, 754, 574 N.E.2d 99, 102 (1991), and *Archer Daniels Midland Co.*, 138 Ill. 2d at 118-19, 561 N.E.2d at 627, the courts proceeded to distinguish TTD from PD. The proof necessary to establish permanent total disability (PTD) or permanent partial disability (PPD) is not necessary to establish TTD, and TTD has a duration, an ending point. Although the differences between TTD and PD seem very simple and easily comprehensible, the arguments before this court demonstrate otherwise. The question of whether a claimant's disability is permanent is distinctly different from the question of whether the same disability is temporary. As a result, the fact that "total disability" may be defined the same for PD and TTD cases should not obscure the differences between the two remedies.

In PD cases, if the claimant is not obviously unemployable or no evidence supports a claim of total disability, the claimant must establish the unavailability of employment to a person in his circumstances. Those circumstances include the claimant's health, employment potential, age, training, education, and experience. *Ceco Corp. v. Industrial Comm'n*, 95 Ill. 2d 278, 286-87, 447 N.E.2d 842, 845 (1983); *Lanter Courier v. Industrial Comm'n*, 282 Ill. App. 3d 1, 5-6, 668 N.E.2d 28, 30-31 (1996).

In the odd-lot PTD case, the focus of the Commission is on the degree to which the claimant's medical disability impairs claimant's employability. *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 362, 376 N.E.2d 206, 210 (1978); *Lanter Courier*, 282 Ill. App. 3d at 7,

668 N.E.2d at 31. There is no odd-lot category for TTD, and the type of evidence needed to prove claimant fits into the odd-lot category for PTD or that regular and continuous work is available to claimant is not relevant to the question of whether the claimant is entitled to TTD.

■ We do note that, in TTD cases, the fact that a claimant may occasionally earn wages or perform useful services does not necessarily preclude an award of TTD. See *Zenith Co. v. Industrial Comm'n*, 91 Ill. 2d 278, 286-87, 437 N.E.2d 628, 632 (1982) (self-employment selling hot dogs a few hours a day would not preclude claimant from receiving TTD); *J.M. Jones Co. v. Industrial Comm'n*, 71 Ill. 2d 368, 372-73, 375 N.E.2d 1306, 1308-09 (1978) (driving a school bus three hours per day did not preclude claimant from receiving TTD); *Ford Motor Co. v. Industrial Comm'n*, 126 Ill. App. 3d 739, 742-43, 467 N.E.2d 1018, 1020-21 (1984) (claimant's very limited ability to do light work during a layoff period did not preclude TTD). The decision in *Archer Daniels Midland Co.* discussed the preclusion of TTD benefits in terms of availability of employment, a diligent, but unsuccessful job search, and rehabilitation counseling. *Archer Daniels Midland Co.*, 138 Ill. 2d at 121-22, 561 N.E.2d at 629. However, the duration of TTD is not defined by whether the claimant can find a job somewhere else. See *Choi v. Industrial Comm'n*, 182 Ill. 2d 387, 397-99, 695 N.E.2d 862, 867-69 (1998) (a claimant in a proceeding under section 19(b—1) of the Act (820 ILCS 305/19(b—1) (West 1998)) does not have to attach documents to the petition establishing unavailability of employment).

■ For further clarification, we note that compliance with a "prescribed" rehabilitation program may be evidence of whether the claimant's condition has reached maximum medical improvement. See *Hunter Corp. v. Industrial Comm'n*, 86 Ill. 2d 489, 501, 427 N.E.2d 1247, 1252 (1981). This is not to say that evidence relating to the availability of vocational rehabilitation or that respondent failed to offer vocational rehabilitation is determinative of the duration of TTD.

■ The employer is obligated under the Act to provide physical, mental, and vocational rehabilitation to an injured employee, including the costs and expense of maintenance. 820 ILCS 305/8(a) (West 1998). The Commission has a rule that provides:

> "The employer or his representative, in consultation with the injured employee and, if represented, with his representative, shall prepare a written assessment of the course of medical care, and, if appropriate, rehabilitation required to return the injured worker to employment when it can be reasonably determined that the injured worker will, as a result of the injury, be unable to resume the regu-

lar duties in which he was engaged at the time of injury, or when the period of total incapacity for work exceeds 120 continuous days, whichever first occurs." 50 Ill. Adm. Code § 7110.10(a) (1998). Such rehabilitation efforts may be undertaken even though the extent of the permanent disability cannot yet be determined. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 165, 601 N.E.2d 720, 731 (1992). In a number of cases, the Supreme Court of Illinois and this court have considered whether TTD may be terminated if the injured employee fails to cooperate with rehabilitation that is provided by the employer. These cases are discussed in *Stone v. Industrial Comm'n*, 286 Ill. App. 3d 174, 177-79, 675 N.E.2d 280, 282-84 (1997). However, these cases are distinguishable from the case at bar and do not implicate the duration of TTD in any way except through the lack of good-faith cooperation by claimant when rehabilitation is provided by the employer. There may indeed be instances when TTD benefits cease but maintenance benefits for vocational rehabilitation continue.

Entitlement to rehabilitation is generally established when there has been a reduction of earning power due to an employment-related injury and such rehabilitation will increase claimant's earning capacity. *National Tea Co. v. Industrial Comm'n*, 97 Ill. 2d 424, 432, 454 N.E.2d 672, 676 (1983); *Howlett's Tree Service v. Industrial Comm'n*, 160 Ill. App. 3d 190, 194, 513 N.E.2d 82, 84 (1987). In many cases, the fact of a reduction in a claimant's earning capacity cannot be established until the nature and extent of the claimant's permanent disability are known. Evidence that claimant can be retrained for a job or jobs other than the one that he was doing when injured does not necessarily tend to establish whether claimant has reached maximum medical improvement. *Maintenance and TTD are separate and distinct benefits*.

The order of the circuit court of Christian County is affirmed, and the cause is remanded to the Commission pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 337, 399 N.E.2d 1322, 1326 (1980).

Order affirmed; cause remanded.

HOFFMAN, COLWELL, HOLDRIDGE, and RARICK, JJ., concur.