BOBBY L. ANDERS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (OTR Wheel, Appellee).—OTR WHEEL ENGINEERING, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Bobby Anders, Appellee).

Fourth District (Industrial Commission Division)  Nos. 4—01—0839WC, 4—01—0840WC cons.

Argued June 25, 2002.—Opinion filed July 16, 2002.—Rehearing denied August 21, 2002.

Thomas R. Lichten, of Thomas R. Lichten, Ltd., of Chicago, for Bobby L. Anders.

Karen A. Haarsgaard, of Ganan & Shapiro, P.C., of Chicago, for OTR Wheel Engineering.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In separate appeals, respondent employer OTR Wheel Engineering and claimant Bobby Anders appeal from an order of the circuit court of Adams County confirming in part a decision of the Illinois Industrial Commission (Commission). On reconsideration, we now grant respondent's motion to consolidate these appeals.

The arbitrator awarded claimant $193.85 per week for 49 weeks for total temporary disability (TTD) and $22,433.98 for medical expenses. 820 ILCS 305/8(a), (b) (West 2000). On review, the Commis-

sion affirmed the arbitrator's award in all respects with the exception of (1) modifying the TTD award to $210.19 per week for $70^6/7$ weeks and (2) finding that claimant was entitled to $824.15 additional compensation under section 19(k) of the Workers' Compensation Act (Act), $2,500 under section 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2000)), and $329.65 section 16 attorney fees (820 ILCS 305/16 (West 2000)). The circuit court modified the decision to add additional compensation of $580.93 under section 19(k) of the Workers' Compensation Act (Act) (820 ILCS 305/19(k) (West 2000)) and $232.37 additional attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2000)) based on unpaid medical bills and confirmed the Commission decision in all other respects.

The issues raised by respondent on appeal are whether (1) the Commission's calculation of claimant's average weekly wage was against the manifest weight of the evidence, (2) the Commission's finding of the duration of TTD was against the manifest weight of the evidence, (3) the Commission's determination that claimant was entitled to additional compensation and attorney fees was against the manifest weight of the evidence, (4) the Commission's finding of the amount of section 19(*l*) additional compensation was against the manifest weight of the evidence, and (5) the circuit court's finding that claimant was entitled to additional compensation and attorney fees for unpaid medical expenses was against the manifest weight of the evidence. The only issue raised by claimant is whether the circuit court's refusal to award additional compensation and attorney fees for the $21,246.11 in medical expenses incurred at Blessing Hospital was against the manifest weight of the evidence or contrary to law. We reverse the circuit court's modification of the Commission decision directing respondent to pay section 19(k) additional compensation and section 16 attorney fees for failing to pay $1,161.87 in medical expenses and affirm the circuit court's order in all other respects, thereby reinstating the Commission decision in its entirety.

Claimant (born January 30, 1964) testified that he began working for respondent in August 1997. Respondent's exhibit 10 was claimant's payroll records from September 8, 1997, through December 31, 1997, and from January 2, 1998, through February 20, 1998. During this 23-week period, claimant worked 835 regular hours and 44.75 hours of overtime. He earned $8 per hour in straight time and $12 per hour for overtime. In addition to claimant's testimony, evidence was presented from Drs. Phillip Wilson, Michael Feely, Curtis Burton, Arden Reynolds, Leo Ludwig and Marshall Matz.

The Commission found that claimant was temporarily totally disabled commencing February 25, 1998, through July 6, 1999, for a

period of 70⁶/₇ weeks and that claimant was authorized off work by Drs. Wilson, Feely, Burton, and Reynolds during this time commencing with Wilson's note of February 25, 1998, taking claimant off work "unless very light duty then call me." Although Burton released claimant to restricted duty commencing November 9, 1998, the Commission found that respondent continued to pay TTD because it could not accommodate claimant's restrictions. The Commission found that claimant had not reached maximum medical improvement and was not released from medical treatment. The Commission observed that Dr. Robert Pierron examined claimant's right hip on November 4, 1998, and recommended arthroscopic surgery. From November 9, 1998, through March 24, 1999, claimant attended appointments with respondent's examining physicians and continued to actively seek medical treatment from his treating physicians for continued complaints of back and right hip pain. Claimant was taken off work again on March 24, 1999, after a visit to the emergency room at Blessing Hospital. Wilson continued claimant off work as of April 5, 1999. Reynolds also continued claimant off work pending his second back surgery in May 1999, and claimant had not been released to work at the time of the arbitration hearing. Based on the foregoing findings, the Commission found that claimant was temporarily totally disabled commencing February 25, 1998, through the date of the arbitration hearing on July 6, 1999.

The Commission further found that claimant's average weekly wage was $315.29, exclusive of overtime. The Commission referred to respondent's exhibit 10 indicating that claimant worked 22 full pay periods for respondent and that the accident of February 18, 1998, occurred during the 23rd pay period ending on February 20, 1998. Claimant's preaccident earnings, beginning with his employment with respondent in August 1997, were determined as of the last day of the employee's last full pay period immediately preceding the date of injury. Claimant's total straight time earnings in the 22 weeks preceding the accident were $6,432. The record indicated that claimant lost eight days of work during the 22-week period prior to the accident. These eight days were deducted from the 22-week period leaving a total of 20.4 weeks worked and resulting in an average weekly wage of $315.29. The Commission found that claimant did not regularly work overtime during the 22-week period and did not include overtime in the calculation of his average weekly wage.

The Commission awarded additional compensation under sections 19(k) and 19(l) and attorney fees under section 16 of the Act based on the respondent's unreasonable and vexatious termination of temporary total disability benefits as of May 25, 1999. The Commission noted

that claimant testified he never received a train ticket from respondent and that the proffered travel expenses of $50 was insufficient to cover claimant's costs. The Commission found that claimant's failing to travel 600 miles round trip from Quincy to Chicago for an examination by Matz did not justify respondent's termination of benefits. According to the Commission, while respondent had a right to schedule an examination, the $50 advanced could not cover the cost of his travel, and it was unreasonable for respondent to schedule an exam so far from claimant's home. The Commission took notice of the fact that it frequently reviewed expert medical reports from physicians closer to claimant's home. In addition, the Commission found that the opinion of Matz regarding the necessity of claimant's fusion surgery rendered after his review of claimant's medical records failed to provide a sufficient good-faith basis for the termination of benefits so as to avoid the imposition of penalties and fees under the Act. The Commission determined that claimant was entitled to section 19(k) additional compensation in the amount of $824.15, section 19(*l*) additional compensation in the amount of $2,500, and section 16 attorney fees in the amount of $329.65. The awarded additional compensations and attorney fees were not calculated based on any unpaid medical expenses because the Commission found that the record reflected that respondent received the outstanding medical bills on the day of the arbitration hearing, eliminating any delay in payment warranting the imposition of penalties. In addition, the amount of unpaid medical expenses was not included in the penalties petition filed by petitioner which was based entirely on the termination of TTD benefits.

■ Computation of average weekly wage is governed by section 10 of the Act (820 ILCS 305/10 (West 2000)). Section 10 sets forth four methods for determining average weekly wage. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 230-31, 756 N.E.2d 822, 826 (2001). On the undisputed facts of this case, respondent argues that the Commission utilized the wrong method for calculating average weekly wage and that the correct calculation should result in an average weekly wage of $293.36 instead of $315.29. Since the analysis amounts to a determination of which statutory method applies to the undisputed facts of this case, this is a question of statutory construction that we consider *de novo*. *Sylvester*, 197 Ill. 2d at 232, 756 N.E.2d at 827.

The Commission applied the third method of section 10 in this case. Under the third method, if the claimant's employment began in the 52-week period preceding the date of injury, claimant's earnings are to be divided by the number of weeks and parts thereof during which claimant "actually" earned wages. *Sylvester*, 197 Ill. 2d at 230-31, 756 N.E.2d at 826; 820 ILCS 305/10 (West 2000).

■ Respondent inappropriately relies on *Ricketts v. Industrial Comm'n*, 251 Ill. App. 3d 809, 623 N.E.2d 847 (1993). In *Ricketts*, the court found that the Commission's use of the third method was improper. In *Ricketts*, the employee had worked four days over a three-week period so that the appropriate method for calculating average weekly wage was the fourth method instead of the third method. *Ricketts*, 251 Ill. App. 3d at 812, 623 N.E.2d at 849. The *Ricketts* court determined that, under the facts of that case, the proper method to be utilized was that referring to circumstances in which the employment was noncontinuous or less than full time. *Ricketts*, however, is distinguishable from this case for the same reasons that it was distinguished in *Sylvester*, *i.e.*, the decision was based, not on statutory construction, but on the insufficiency of evidence. *Sylvester*, 197 Ill. 2d at 234, 756 N.E.2d at 828. *Ricketts* does not require a different result in the case at bar where there is no dispute that claimant worked full time and was employed continuously from the date of hire to the date of injury. The fact that claimant lost eight days prior to the injury, for whatever reason, did not render his employment with respondent noncontinuous since he remained in respondent's employ. There was no evidence of extended layoffs or intermittent employment. The Commission's finding of average weekly wage was not against the manifest weight of the evidence.

■ The time during which a claimant is temporarily totally disabled is a question of fact for the Commission; claimant must prove not only that he did not work, but that he was unable to work; and the dispositive test is whether the claimant's condition has stabilized. *Freeman United Coal Co. v. Industrial Comm'n*, 318 Ill. App. 3d 170, 175, 741 N.E.2d 1144, 1148-49 (2000). In determining whether the Commission's finding of fact is against the manifest weight of the evidence, this court considers the sufficiency of the factual evidence in the record to support the Commission's determination. *Freeman United Coal*, 318 Ill. App. 3d at 173, 741 N.E.2d at 1147, quoting *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995).

■ Respondent argues that claimant has failed to prove that he was disabled from November 8, 1998, to March 29, 1999, because, on November 8, 1998, Burton released him to return to light-duty work. Respondent conceded that claimant sought to return to work for respondent, but respondent had no work available within claimant's restrictions. According to respondent, it was claimant's "responsibility to prove that he was unable to find work within his restrictions after reaching maximum medical improvement." "[A]n argument focusing on whether the claimant is available for work in some other capacity

and could and should have sought alternative employment misses the mark in TTD cases." *Freeman United Coal*, 318 Ill. App. 3d at 177-78, 741 N.E.2d at 1150.

Respondent points to nothing in the record that supports its contention that claimant reached maximum medical improvement on November 8, 1988, and indeed the entire record suggests otherwise. The Commission found that claimant did not reach maximum medical improvement on November 8, 1998, and further found that claimant had significantly improved following subsequent medical treatment. Respondent does not argue that the medical treatment provided to claimant subsequent to November 8, 1998, was for a condition that was not causally related to the accident of February 18, 1998. As a result, the Commission could reasonably find, on the evidence in the record, that claimant had not reached maximum medical improvement on November 8, 1998.

■ We next consider whether the Commission's determination that claimant was entitled to additional compensation and attorney fees was against the manifest weight of the evidence. Respondent argues that it reasonably relied on claimant's failure to appear for two scheduled functional capacity evaluations, his failure to appear for the independent medical examination by Matz, and Matz' opinions regarding discrepancies between the claimant's complaints and behavior.

> "The additional compensation authorized by section 19(l) is in the nature of a late fee. The statute applies whenever the employer or its carrier simply fails, neglects, or refuses to make payment or unreasonably delays payment 'without good and just cause.' If the payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay, an award of the statutorily specified additional compensation is mandatory.
>
> In contrast to section 19(l), section 19(k) provides for substantial penalties, imposition of which are discretionary rather than mandatory. See *Smith v. Industrial Comm'n*, 170 Ill. App. 3d 626, 632 (1988). The statute is intended to address situations where there is not only delay, but the delay is deliberate or the result of bad faith or improper purpose. This is apparent in the statute's use of the terms 'vexatious,' 'intentional' and 'merely frivolous.' Section 16, which uses identical language, was intended to apply in the same circumstances." *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515, 702 N.E.2d 545, 552-53 (1998).

Awards for additional compensation will not ordinarily be imposed, for example, when the employer acts in reliance on responsible medical opinions or when there are conflicting medical opinions. *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173, 746 N.E.2d 751, 756 (2001). Whether the employer's conduct justifies imposing additional

compensation is a question of fact for the Commission that will not be disturbed on review unless it is against the manifest weight of the evidence. *Matlock*, 321 Ill. App. 3d at 173, 746 N.E.2d at 756.

Respondent argues on appeal that its termination of TTD benefits on May 26, 1999, was justified based on (1) Ludwig recommending a functional capacity evaluation, Burton scheduling the functional capacity evaluation for April 13, 1999, and claimant testifying he did not appear because he did not feel well and his chiropractor, Dr. T.J. Vance, told him to stay off his feet; (2) claimant not attending the rescheduled functional capacity evaluation; (3) respondent scheduling an independent medical examination by Matz for May 25, 1999, claimant knowing of the appointment and receiving and cashing a $50 check for expenses, a train ticket having been mailed to claimant, although claimant testified he did not receive the train ticket, and claimant not attending the scheduled examination by Matz; and (4) the opinions reported by Matz in his report dated June 4, 1999, following review of the medical records.

■ After claimant filed his statement of exceptions to the arbitrator's decision and supporting brief, respondent filed a brief in support of the arbitrator's decision. In the section of the argument relating to the refusal of the arbitrator to award claimant additional compensation and attorney fees, respondent did not mention claimant's failure to attend the original and rescheduled functional capacity evaluations. Respondent cannot now rely on an argument not made to the Commission. *Insulated Panel Co. v. Industrial Comm'n*, 318 Ill. App. 3d 100, 105, 743 N.E.2d 1038, 1042 (2001) (argument not made before the Commission is waived on appeal).

■ Section 12 of the Act states in relevant part:

"An employee entitled to receive disability payments shall be required, if requested by the employer, to submit himself, at the expense of the employer, for examination to a duly qualified medical practitioner or surgeon selected by the employer, at any time and place reasonably convenient for the employee, either within or without the State of Illinois, for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability according to the provisions of this Act. ***

An employer requesting such an examination, of an employee residing within the State of Illinois, shall pay in advance of the time fixed for the examination sufficient money to defray the necessary expense of travel by the most convenient means to and from the place of examination, and the cost of meals necessary during the trip, and if the examination or travel to and from the place of

examination causes any loss of working time on the part of the employee, the employer shall reimburse him for such loss of wages upon the basis of his average daily wage. ***
***

If the employee refuses so to submit himself to examination or unnecessarily obstructs the same, his right to compensation payments shall be temporarily suspended until such examination shall have taken place, and no compensation shall be payable under this Act for such period." 820 ILCS 305/12 (West 2000).

The Commission found (1) claimant never received the train ticket, (2) the $50 tendered by respondent was insufficient to cover claimant's travel expenses, and (3) it was unreasonable to schedule an examination so far from claimant's home when physicians who had previously provided expert opinions before the Commission were available closer to claimant's home. For those reasons, the Commission found that termination of TTD benefits by respondent was unreasonable and vexatious.

■ Section 12 requires that the time and place for examination must be "reasonably convenient for the employee." 820 ILCS 305/12 (West 2000). Section 12 further requires that the employer pay "in advance of the time fixed for the examination sufficient money to defray the necessary expenses of travel by the most convenient means to and from the place of examination, and the cost of meals necessary during the trip." 820 ILCS 305/12 (West 2000). The Commission reasonably found that respondent had not complied with section 12 and, therefore, could not rely on section 12 as a basis for terminating TTD benefits. Those findings were not against the manifest weight of the evidence.

■ Respondent also relies on Matz' report. The Commission found that Matz' opinion regarding the necessity of fusion surgery failed to provide sufficient good-faith basis for terminating TTD benefits.

Initially, it is observed that TTD benefits were terminated prior to the June 4, 1999, report from Matz. Matz was of the opinion that the original surgery was not necessary in light of claimant's complaints and symptoms. He had no information about any intervening occurrence, but believed that the continuing complaints were not organically based. Based on the records provided, Matz was unable to state whether the original spinal fusion had healed fully, but he did not believe that claimant had recurrent disc herniation and continuing bulging at L4. In Matz' opinion, further surgery would not be of any value. Because claimant had no focal findings or signs to go with his complaints, Matz felt claimant "may have reached maximum medical improvement" but "it can be extremely difficult to tell whether or not

he has any residual impairment as a result of the February 18, 1998, occurrence.'' According to Matz, claimant may have a long-standing level of chronic back complaints, and Matz anticipated claimant was reluctant to resume gainful employment activity.

In light of Matz' equivocation about whether claimant had reached maximum medical improvement and the nature and extent of claimant's injury, the Commission could reasonably find that Matz' report was not sufficient to support respondent's unilateral termination of TTD benefits.

■ Respondent further argues that the amount of section 19(*l*) additional compensation was not properly calculated by the Commission. Section 19(*l*) provides that additional compensation under that provision is to be calculated at ''$10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500.'' 820 ILCS 305/19(*l*) (West 2000).

■ Respondent argues that from May 26, 1999, the date TTD benefits were terminated, to July 6, 1999, the date of the arbitration hearing, was only 42 days and, therefore, the section 19(*l*) penalty should be $420. However, the arbitrator did not award section 19(*l*) additional compensation. Instead, the Commission did that, and the date of the Commission decision was August 3, 2000, more than 250 days after May 26, 1999. The Commission correctly calculated the section 19(*l*) additional compensation. The Commission is the finder of fact and is not reviewing the arbitrator's award as would a reviewing court. See *Messamore v. Industrial Comm'n*, 302 Ill. App. 3d 351, 356, 706 N.E.2d 44, 47 (1999) (the Commission exercises original rather than appellate jurisdiction).

■ Finally, we consider whether the circuit court's finding that claimant was entitled to additional compensation and attorney fees for unpaid medical expenses was against the manifest weight of the evidence. The Commission found claimant entitled to $22,433.98 in medical expenses, but also found that the section 19(k) additional compensation and section 16 attorney fees would not be calculated on the amount of unpaid medical expenses because the record indicated respondent received the outstanding bills on the day of the arbitration hearing so there was no delay in payment warranting imposition of additional compensation and attorney fees. The circuit court apparently found this finding of the Commission against the manifest weight of the evidence with regard to $1,161.87 of unpaid medical bills and modified the Commission decision to include an additional $580.93 in section 19(k) additional compensation and $232.37 in section 16 attorney fees. The only medical bills on which additional compensation

and attorney fees was not calculated were the bills of Blessing Hospital, amounting to $21,246.11, and a $26 payment already made to Vance Chiropractic.

At the arbitration hearing, the parties addressed claimant's motion for additional compensation and attorney fees. Claimant's attorney explained that the specific amounts of medical bills were not listed in the motion "because I don't think at that time we knew for sure what it was." Respondent's attorney informed the arbitrator that she had not received the Blessing Hospital bill until the day of the hearing.

In his appeal, claimant contends that section 19(k) additional compensation and section 16 attorney fees should be imposed for the $21,246.11 Blessing Hospital bill. At the hearing before the circuit court, claimant's attorney admitted that this bill was presented to opposing counsel on the day of the hearing because he had received it only a short time before. This is consistent with respondent's counsel's statement to the arbitrator that she had received the Blessing Hospital bill the day of the hearing.

For calculating section 19(k) additional compensation and section 16 attorney fees, each type of benefit (TTD, PPD, PTD, medical) constitutes "an award" within the meaning of the Act. *Moore v. Industrial Comm'n*, 188 Ill. App. 3d 31, 36, 543 N.E.2d 1062, 1065 (1989). However, at the Commission's discretion, the amount of additional compensation and attorney fees may be calculated on (1) the "entire" amount of similar types of benefit payable at the time of the "award" even if there has been no delay in paying part of that benefit or (2) only the unpaid portion thereof. *Navistar International Transportation Corp. v. Industrial Comm'n*, 331 Ill. App. 3d 405, 413-14 (2002). The Commission may not impose penalties and attorney fees on any portion of an award that has not yet accrued. *Zitzka v. Industrial Comm'n*, 328 Ill. App. 3d 844, 852, 767 N.E.2d 405, 411 (2002).

Respondent does not dispute that section 19(k) additional compensation and section 16 attorney fees can be imposed on the unreasonable and vexatious delay in paying claimant's medical bills incurred as a result of the accidental injury. See *McMahan v. Industrial Comm'n*, 183 Ill. 2d at 512, 702 N.E.2d at 551. The Commission could properly find it had insufficient evidence to establish that any delay in payment of medical bills occurred. Claimant had the burden of proving that the bills were submitted to respondent, when that occurred, and that respondent had failed or refused to pay. Thereafter, the burden would shift to respondent to establish a valid reason for failing or refusing to pay those bills. See *Modern Drop Forge Corp. v.*

*Industrial Comm'n*, 284 Ill. App. 3d 259, 266, 671 N.E.2d 753, 758 (1996) (*if* employer delays paying compensation, then the employer must prove it had a reasonable belief that the delay was justified).

On appeal, claimant relies on the dates when the services were rendered and argues that respondent should not be allowed to challenge the services as being unrelated to the accidental injury. Respondent, however, does not challenge causal relationship.

The argument of claimant's attorney before the circuit court also did not point to any specific evidence in the record about when the bills were submitted to respondent, but only said "the other bills that were not paid and should have been paid had been forwarded to the respondent a good deal of time prior to the hearing." He was referring to the bills other than the Blessing Hospital bill.

The Commission's finding that claimant failed to prove an unreasonable and vexatious delay in payment of any medical bills, including the Blessing Hospital bill, was not against the manifest weight of the evidence. In light of the absence of proof, the Commission's determination that section 19(k) additional compensation and section 16 attorney fees should not be calculated on the unpaid medical bills was not against the manifest weight of the evidence.

We reverse the circuit court's modification of the Commission decision directing respondent to pay section 19(k) additional compensation and section 16 attorney fees for failing to pay $1,161.87 in medical expenses; affirm the circuit court's order in all other respects; and reinstate the Commission decision in its entirety.

Circuit court affirmed in part, and reversed in part; Commission decision reinstated.

HOFFMAN, O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.