RODNEY WALKER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(AmerenCIPS, Appellee).

Fourth District (Industrial Commission Division)   No. 4—03—0087WC

Argued January 14, 2004.—Opinion filed February 2, 2004.

James W. Ackerman (argued), of Ackerman Law Office, of Springfield, and Norbert J. Goetten, of Jerseyville, for appellant.

Gary A. Brown (argued) and Julie Cox Hovermale, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant, Rodney Walker, filed an application seeking benefits for injuries from employer, AmerenCIPS, pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). On June 1, 2001, an arbitrator concluded claimant had suffered compensable injuries on March 30, 1998, and February 23, 1999, and awarded claimant temporary total disability (TTD) benefits for 112 weeks up to the time of the hearing at a rate of $702.40 per week, and for each week thereafter at the same rate. On April 22, 2002, the Illinois Industrial Commission (Commission) modified the arbitrator's decision, vacating the award of TTD benefits covering the time period after hearing and concluding claimant was temporarily totally disabled for only $29^6/_7$ weeks. The Commission otherwise affirmed the arbitrator's decision.

On May 10, 2002, claimant filed an action in the circuit court of Sangamon County, seeking administrative review of the Commission's decision. On January 9, 2003, the circuit court confirmed the Commission's decision. On appeal, claimant argues that the Commission improperly reduced his award of TTD benefits from 112 weeks to $29^6/_7$ weeks. We affirm the trial court's judgment as modified by an award of 84 weeks' TTD benefits.

On March 30, 1998, claimant was employed by employer as an electrical utility foreman. On that date, he ruptured a disc in his back when lifting a reel of wire. Claimant underwent a laminectomy and performed rehabilitation. He returned to work for about two months.

On February 23, 1999, claimant ruptured a disc in his back when he slipped on a sheet of ice while exiting his truck. Claimant underwent a second laminectomy. Claimant did not return to work after February 23, 1999. Employer paid claimant TTD benefits through October 13, 2000.

Dr. Sheehan, who performed the two laminectomies, informed claimant about his physical condition following the second procedure, stating that "he couldn't do anything about it, it's not your problem." Claimant sought a second opinion from Dr. David Robson.

Dr. Robson examined claimant on September 15, 1999. On that date, Robson indicated claimant had two options, "either accept his condition with permanent light duty work restrictions" or undergo surgery. Even with successful surgery, claimant "would still be left with light to moderate restrictions." Robson directed claimant "to think his options over and let me know." If claimant elected against surgery, Robson concluded that claimant would then have "reached the point of maximum medical improvement."

At the April 19, 2001, hearing, the only matter before the arbitrator was the extent of TTD benefits under section 19(b) of the Act (820 ILCS 305/19(b) (West 1998)). Claimant testified he currently had back pain, pain down both legs, and numbness in his left foot. He wanted the surgery because he believed it would help with the back and leg pain, although it "wouldn't help a whole lot" with the numbness. He stated he was unable to work or perform the duties of electrical utility foreman. This statement was supported by the report of Dr. Anne-Marie Nicolazzi, which indicated claimant was unable to pursue the essential functions of the electrical utility foreman position.

However, claimant acknowledged Dr. Robson had opined to him that he "had reached the point of maximum medical improvement." He further acknowledged that at the October 4, 2000, follow-up visit Robson found no significant change in his medical condition since September 15, 1999.

The arbitrator stated that in light of the fact employer had paid TTD benefits to claimant through October 13, 2000, the only issue to be decided at hearing was whether claimant was entitled to continuing TTD benefits. She found that continuing TTD benefits was warranted where claimant could not return to his duties as electrical utility foreman. She further found claimant had not reached maximum medical improvement because he had continued pain and he had not indicated *against* any surgery. Because claimant indicated a desire for surgery at hearing, the arbitrator concluded that "an inference exists that he has not reached MMI." She found that continuing TTD payments was required in this case where no change had occurred since October 13,

2000. She awarded TTD benefits from the date of the second injury, February 23, 1999, "to and including the date of this hearing April 19, 2001, and each and every week thereafter at the rate of $702.40 per week until further order of this Arbitrator."

The Commission modified the arbitrator's decision by reducing the amount of TTD benefits from 112 to 29⁶/₇ weeks to cover the period between the February 23, 1999, injury and the September 15, 1999, office visit, and vacating the arbitrator's award of TTD benefits for "each and every week thereafter." The Commission otherwise affirmed the decision. It remanded the case to the arbitrator, pending any appeal, to determine any further amount of TTD benefits and compensation for any permanent disability. Claimant filed an action for administrative review in the circuit court of Sangamon County, and the circuit court confirmed the Commission's decision. This appeal followed.

Claimant contests the Commission's decision to reduce TTD benefits from 112 weeks to 29⁶/₇ weeks. He argues that because employer stated on the request for hearing claimant had suffered 84 weeks of temporary total disability, the Commission was without the power to reduce his TTD benefits below that level. Claimant suggests that where "a party stipulates to a fact, that party cannot later claim that the fact is incorrect."

The disputed language is contained in the "Industrial Commission Request for Hearing" form. Claimant argued he was temporarily totally disabled from February 23, 1999, up through the date of the hearing, amounting to 111 weeks of TTD (the time period through the time of hearing was actually 112³/₇ weeks), and stated that his condition was continuing in nature. Employer indicated on the form that it disputed the issue of duration and countered that claimant was temporarily totally disabled for 84 weeks, from February 23, 1999, through October 13, 2000.

Claimant contends the Commission did not have the power to modify TTD benefits to a period any less than 84 weeks because the statement on the request for hearing was in effect a stipulation by employer. We agree.

■ The applicable administrative regulation regarding requests for hearing is contained in section 7030.40 of Title 50 of the Illinois Administrative Code. 50 Ill. Adm. Code § 7030.40 (Conway Greene CD-ROM April 2002). That section provides, in pertinent part:

> "Before a case proceeds to trial on arbitration, the parties (or their counsel) shall complete and sign a form provided by the Industrial Commission called Request for Hearing. *** The completed Request for Hearing form, signed by the parties (or

their counsel), shall be filed with the Arbitrator *as the stipulation of the parties* and a settlement of the questions in dispute in the case." (Emphasis added.) 50 Ill. Adm. Code § 7030.40 (Conway Greene CD-ROM April 2002).

The language of section 7030.40 indicates that the request for hearing is binding on the parties as to the claims made therein.

Moreover, a party may not argue for a suspension of TTD benefits effective on a date prior to a date it has previously asserted was an appropriate date for suspension of benefits. See *Allied Chemical Corp. v. Industrial Comm'n*, 140 Ill. App. 3d 73, 75, 488 N.E.2d 603, 604 (1986). Therefore, employer was bound by its stipulation that 84 weeks' TTD benefits was appropriate.

■ Claimant also argues that he is entitled to TTD, as awarded by the arbitrator, to the date of the hearing. The time during which a claimant is temporarily totally disabled is a question of fact for the Commission, and we will not disturb the Commission's findings on this issue unless they are against the manifest weight of the evidence. *Anders v. Industrial Comm'n*, 332 Ill. App. 3d 501, 507, 773 N.E.2d 746, 751-52 (2002). Claimant must prove not only that he did not work but that he was unable to work; and the dispositive test is whether his condition had stabilized. *Anders*, 332 Ill. App. 3d at 507, 773 N.E.2d at 751-52.

■ "When a court determines the duration of TTD, the only questions that need to be asked and answered are whether the claimant has yet reached maximum medical improvement and, if so, when." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 318 Ill. App. 3d 170, 178, 741 N.E.2d 1144, 1150 (2000). Once a claimant has reached maximum medical improvement, his condition "is no longer temporary and entitlement to TTD benefits ceases even though claimant may thereafter be entitled to receive permanent total or partial disability benefits." *Freeman*, 318 Ill. App. 3d at 178, 741 N.E.2d at 1150.

The Commission's reasoning in this case is instructive:

"[T]he record is devoid of any evidence of steps taken by Petitioner to obtain the recommended surgery at any time between September 15, 1999 and the date of the Arbitration hearing on April 19, 2001. Rather, based on the record, Petitioner waited approximately a year and a half to decide whether to undergo the recommended surgical procedure while continuing to collect temporary total disability benefits. The Commission finds Petitioner's lengthy delay in considering surgical options to be unreasonable."

After September 15, 1999, claimant next saw Dr. Robson on October 4, 2000, and had no treatment in the meantime. Claimant did

not contact Robson between those dates to comply with his instruction to let him know what course of action claimant had chosen. On October 4, 2000, Robson concluded no significant change had occurred and claimant's options remained the same. Claimant took no substantial steps to either schedule surgery or indicate he would accept his present physical condition. Instead, he waited until the April 19, 2001, hearing to affirmatively manifest his desire to have surgery. Further, claimant admitted at hearing that Robson had told him on September 19, 1999, he had reached maximum medical improvement. Under the circumstances, the Commission could reasonably find as of September 15, 1999, claimant's condition had stabilized to a point that he had reached maximum medical improvement and was no longer entitled to TTD benefits.

Claimant asserts, citing no authority, that maximum medical improvement is not as important as whether or not he can return to work, and an opposing position violates the Act and is wrong as a matter of law. However, again, the primary consideration in TTD cases is whether claimant's condition has stabilized. *Anders*, 332 Ill. App. 3d at 507, 773 N.E.2d at 751-52.

■ It is the Commission's function to assess credibility of the witnesses and draw reasonable inferences from the evidence. We will not substitute our judgment for that of the Commission merely because we might have reached a different conclusion. *Pollard v. Industrial Comm'n*, 91 Ill. 2d 266, 277, 437 N.E.2d 612, 617 (1982). The Commission's conclusion that claimant had reached maximum medical improvement was reasonable on the evidence presented. Its finding was not against the manifest weight of the evidence.

Citing *Allied Chemical*, 140 Ill. App. 3d 73, 488 N.E.2d 603, claimant also argues the Commission erred in determining his delay in seeking surgery was unreasonable and that he could not be forced to have surgery. Questions of fact relating to whether a claimant's decision to have surgery is reasonable are questions for the Commission, and we will not disturb the Commission's decision unless it is contrary to the manifest weight of the evidence. See *Allied Chemical*, 140 Ill. App. 3d at 77, 488 N.E.2d at 605.

In *Allied Chemical*, the claimant suffered a herniated disc, for which doctors recommended surgery. *Allied Chemical*, 140 Ill. App. 3d at 74, 488 N.E.2d at 604. The claimant refused to have surgery because she was afraid of the procedure. *Allied Chemical*, 140 Ill. App. 3d at 74-75, 488 N.E.2d at 604. The arbitrator concluded claimant was totally and permanently disabled and awarded her weekly compensation thereunder for life. *Allied Chemical*, 140 Ill. App. 3d at 75, 488 N.E.2d at 604. The Commission affirmed the arbitrator's decision and

the circuit court confirmed the decision of the Commission. *Allied Chemical*, 140 Ill. App. 3d at 74, 488 N.E.2d at 603.

On appeal, the reviewing court affirmed, noting most courts will not disturb a decision that refusal to submit to an operation is reasonable. The court determined the record contained little evidence of the nature of the surgery, the necessity for the procedure, or its possible consequences and benefits. *Allied Chemical*, 140 Ill. App. 3d at 76, 488 N.E.2d at 605. The court cited numerous cases where the fear of an operation was a justifiable reason to forego surgery. *Allied Chemical*, 140 Ill. App. 3d at 77, 488 N.E.2d at 605.

Unlike *Allied Chemical*, the claimant in the instant case did not refuse to undergo surgery because of a justifiable fear. On the contrary, he indicated that he wanted the surgery. The claimant in *Allied Chemical* did not want surgery and would have been effectively forced into undergoing the procedure notwithstanding that fact. Here, although claimant states that the Commission's decision has the same effect, he admits that he in fact does want the surgery. Also dissimilar to *Allied Chemical*, claimant is not being denied all recourse to benefits. The arbitrator here has not considered eligibility for TTD benefits after June 1, 2001, and permanent disability benefits. The Commission here specifically directed that the case return to the arbitrator for such determination.

Further, claimant took no substantial steps to undergo surgery but made the assertion at the arbitration hearing. If a claimant may delay the process for purposes of securing additional TTD benefits, he may under the circumstances be able to collect benefits to which he would not otherwise be entitled. The Commission's decision that the 19-month delay by claimant was unreasonable was a reasonable inference to be drawn from the evidence and is not against the manifest weight of the evidence.

■ Claimant next argues that the Commission's decrease in the award of TTD benefits was improper where he could not return to work in his usual capacity. He cites to no authority and again erroneously assumes that claimant's inability to work precludes a termination of TTD benefits. See *Freeman*, 318 Ill. App. 3d at 178, 741 N.E.2d at 1150. Therefore, his argument is without merit.

■ Claimant also argues that (1) even if he is not entitled to TTD benefits, he is still entitled to maintenance and (2) permanence cannot be determined in a case until claimant completes a rehabilitation program. These issues were not presented to either the arbitrator or the Commission and are therefore forfeited on appeal. See *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 336, 399 N.E.2d 1322, 1326 (1980).

For the reasons stated, we affirm the trial court's judgment as modified by an award of 84 weeks' total TTD benefits.

Affirmed as modified.

HOFFMAN, CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.