BETTY J. KUHL, Appellee, *v.* THE INDUSTRIAL COMMISSION *et al.* (Van Wingerden, Inc., Appellant).

Third District (Industrial Commission Division)   No. 3—84—133WC

Opinion filed August 2, 1984.—Rehearing denied September 19, 1984.

Stephen M. Masters, of Masters & Stukel, of Joliet, for appellant.

Kevin Kelly, of La Salle, and Peter F. Arden, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Betty J. Kuhl, filed an application for adjustment of claim under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1983, ch. 48, par. 172.36 *et seq.*) for an occupational disease sustained while employed by respondent, Van Wingerden, Inc. An arbitrator found that petitioner was exposed to the hazards of an occupational disease and that said exposure and disease, arising out of and in the course of her employment, left petitioner temporarily totally disabled. The arbitrator awarded petitioner $105.50 per week for 177 weeks and ordered respondent to pay all necessary medical, surgical and hospital expenses. On review, the Industrial Commission reduced the arbitrator's award, finding that petitioner was temporarily totally disabled from May 1, 1978, to December 15, 1978. The Commission awarded her $105.40 per week for 32⁴/₇ weeks. On writ of *certiorari* the circuit court of La Salle County, finding that the Commission's decision was contrary to the manifest weight of the evidence, reversed that decision and reinstated the arbitrator's award.

Petitioner was a seasonal employee of respondent, a greenhouse business, from 1970 to May 1, 1978. Her work involved transplanting plants on a moving conveyor belt, and she worked with moist soil, manure and fertilizer. At work, she usually wore rubber galoshes to protect her feet.

On about May 1, 1978, petitioner testified that she noticed her great toes on each foot were sore and bloody. She saw Dr. George Brannon, her family physician, who diagnosed an acute fungus infection and recommended surgery. She was hospitalized, and on June 1, 1978, her toenails were removed and she was treated with internal medication and a local ointment. Petitioner testified that she continued to see Dr. Brannon from time to time until she started seeing Dr.

Raymond Dempsey.

Petitioner was referred to Dr. Dempsey, a dermatologist, by respondent's insurance company. From January 11, 1980, up to the time of the hearing she was treated by him with internal medication and an ointment. Petitioner introduced five letters from Dr. Dempsey to respondent's attorneys and insurance company. The first letter, dated February 26, 1980, included Dr. Dempsey's diagnosis of onychomycosis, a fungus infection, and his opinion that petitioner's condition was work-related. His subsequent letters in September 1980, November 1980 and March 1981 indicated that petitioner was improving and responding well to medication, but that she was not ready for release. In a letter dated July 27, 1981, Dr. Dempsey stated that petitioner remained under his care and he anticipated continued treatment for three to four months. Petitioner testified that she refused to return to work when called back by respondent in January 1979. She was not seeing a doctor at this time and was not told that she could not return to work, nor had she sought other employment.

Respondent introduced a letter from Dr. Frederick Szymanski, who examined petitioner on August 14, 1981. Dr. Szymanski took a toenail culture which confirmed the diagnosis of onychomycosis. He noted that treatment of a fungus infection is very difficult, but he was puzzled by the fact that petitioner's hands, which were exposed to the manure, were not diseased. He also opined that "hundreds of thousands of people with fungus infection of the feet and toenails" were able to work, and he was puzzled by petitioner's claim that she could not return to work because the infection was worse if she stood for long periods.

Respondent also introduced a standardized form report from Dr. Brannon. At the time of the hearing Dr. Brannon was deceased, and the arbitrator admitted the report over petitioner's objection. On the form, in answering question 6A, "Is patient still under your care for this condition? If 'NO' give date your services terminated," Dr. Brannon indicated that petitioner's treatment for acute fungus infection had terminated on December 15, 1978. For question 7A, "How long was or will patient be constantly totally disabled (unable to work)," he answered June 5, 1978, through December 15, 1978. Dr. Brannon incorrectly listed June 11, 1978, as the date of petitioner's surgery.

On review before the Commission, in addition to the documents presented to the arbitrator, respondent introduced the evidence deposition of Dr. Dempsey and a letter from the Department of Labor.

In his evidence deposition, Dr. Dempsey stated that petitioner was

not able to return to work at the greenhouse in January 1980 when he first examined her. At that time she probably would have had trouble with any other work which required long periods of standing. Dr. Dempsey never told petitioner she could not work, but he recommended that she not return to her former work because of the warm, wet conditions. She was capable of other work if it involved mostly sitting. Petitioner was still being treated by Dr. Dempsey at the time of the hearing on review.

Respondent also introduced a letter from the Illinois Department of Labor, Bureau of Employment Security. The letter established that from June 1978 to March 1982 there were 629 available clerical positions and 249 available sales positions listed with the labor office.

Petitioner testified before the Commission that she still had blood and pus under her toenails and was still under Dr. Dempsey's care. After December 1981, respondent's insurance company stopped paying her medical bills. Petitioner also introduced a letter from Dr. Brannon stating that petitioner was released for work on December 15, 1978, but was not released from his care and that petitioner would again require surgery.

Petitioner, 56 years old, testified that she had a ninth-grade education and that she had sought other work since leaving respondent. Her limited work experience in factory jobs, her lack of clerical experience, and the problems with her toes prevented her from finding other work.

In holding that the Commission's decision was contrary to the manifest weight of the evidence, the trial court asserted that the Commission relied on the form report of Dr. Brannon and Dr. Szymanski's letter, which was misstated, while it disregarded and misstated Dr. Dempsey's evidence.

Respondent contends that the trial court erred in finding the Commission's decision was against the manifest weight of the evidence.

■■ ■ Temporary total disability exists from the time the injury incapacitates the employee until such time as he is as far recovered as the character of the injury will permit. (*Brinkmann v. Industrial Com.* (1980), 82 Ill. 2d 462, 413 N.E.2d 390; *Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 207 N.E.2d 456.) Compensation for temporary total disability is to be awarded until the employee's condition has stabilized. *Caterpillar Tractor Co. v. Industrial Com.* (1983), 97 Ill. 2d 35, 454 N.E.2d 252; *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 3d 198, 437 N.E.2d 617.

■■ Where there is conflicting medical evidence, it is the function

of the Commission to resolve the conflict. (*Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159; *Zarley v. Industrial Com.* (1981), 84 Ill. 2d 380, 418 N.E.2d 717.) Its findings will not be set aside on review unless they are against the manifest weight of the evidence. *Martin v. Industrial Com.* (1982), 91 Ill. 2d 288, 437 N.E.2d 650.

■ In finding that petitioner was as far recovered as the character of the fungus infection would allow, the Commission relied on the form report of Dr. Brannon and Dr. Szymanski's statement that "there are hundreds of thousands of people with fungus infection of the feet and toenails that are not aggravated by working." In light of the overwhelming evidence presented by petitioner that her condition had not stabilized by December 15, 1978, the Commission's decision was against the manifest weight of the evidence.

Dr. Brannon's report was shown to contain several errors and was contradicted by his own letter. In that letter, Dr. Brannon wrote that petitioner, although released for work, was not released from his care. He stated that she again required surgery because the infection of her toenails had not cleared up.

Dr. Szymanski, contrary to the Commission's findings, did not state that petitioner was able to work with her condition. He merely opined that many people with such infections are able to work without aggravating their conditions, without specifying what type of work these people performed. Dr. Szymanski conceded that treatment of this disease is very difficult and the response to medication is slow. He offered no opinion as to whether petitioner could return to work.

Additionally, Dr. Dempsey testified that he was still treating petitioner's infection, that the infection was slowly improving, and that he expected further improvement under a newly approved drug. Dr. Dempsey stated unequivocally that he would not recommend that petitioner return to work for respondent because of the moist, warm conditions, and he did not believe she was capable of any other work which required her to stand.

Clearly, petitioner's condition was not stabilized on December 15, 1978, as far as the character of the infection would allow. Her treating physician was recommending additional surgery, and her subsequent treatment, offered by a doctor to whom petitioner was referred by respondent, continued to improve her condition. The Commission's decision that petitioner's temporary total disability ended on December 15, 1978, was against the manifest weight of the evidence. The trial court properly reversed the decision.

■ Respondent also maintains that petitioner failed to prove that

she was unable to work. Respondent urges that petitioner turned down an offer of work in January 1979, merely because her toes were still sore. It argues that such testimony is speculative and could not be the basis for an award for temporary total disability.

Respondent's reliance on the fact that petitioner was not told to refrain from work ignores the clear testimony of Dr. Dempsey. In his opinion, petitioner should not return to work at respondent's greenhouse because of the warm, moist conditions. He further limited her activity to work which would not require long periods of standing. The only evidence that petitioner could work, the form report of Dr. Brannon, was contradicted by Dr. Brannon's recommendation of a second surgery because petitioner's infection had not cleared. The Commission's finding that petitioner was no longer temporarily totally disabled after December 15, 1978, was contrary to the manifest weight of the evidence.

■ Respondent finally contends that petitioner has not shown her disability made her unemployable. According to respondent, if petitioner could work at other employment, she was not entitled to compensation for total disability.

The requirement that petitioner prove she has been left unemployable as a result of her occupational disease is only relevant when determining an award for permanent total disability. (See *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159; *A.M.T.C. of Illinois, Inc. v. Industrial Com.* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.) The question of petitioner's permanent total disability has not been addressed by the Commission, and we do not address it here.

For the foregoing reasons, the judgment of the circuit court of La Salle County reversing the decision of the Industrial Commission is affirmed.

Judgment affirmed.

SEIDENFELD, P.J., and BARRY, WEBBER, and KASSERMAN, JJ., concur.