MICHAEL DOLCE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Southwest Beer Distributors, Appellee).

First District (Industrial Commission Division)   No. 1—96—0650WC

Opinion filed December 24, 1996.

Joseph J. Spingola, of Chicago, for appellant.

Jobin & Flynn, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Employee, Michael Dolce, appeals from the circuit court's judgment confirming the Industrial Commission's (Commission's) decision denying him temporary total disability (TTD) benefits and allowing Southwest Beer Distributors (Southwest) a credit of $23,952.63 for TTD paid to him pursuant to the Workers' Compensation Act (Act) 820 ILCS 305/1 *et seq.* (West 1994).

Dolce sought benefits pursuant to the Act for a knee injury sustained while he was working for Southwest. Southwest paid him benefits for his periods of absence, but claimed a credit for all TTD paid. The arbitrator awarded Southwest credit for the TTD it had paid, and the Commission affirmed the decision. On judicial review, the circuit court remanded the matter to the Commission to consider additional aspects relating to Dolce's TTD benefits. Upon reviewing the cause, the Commission found that Dolce was not entitled to TTD benefits, and the circuit court confirmed the Commission's decision. We affirm.

The record shows that Dolce was employed at Southwest in 1987 as a "keg helper." On September 14, 1987, Dolce injured his knee during a beer delivery. Because of his injury, Dolce was unable to work at Southwest for a total of 86$\frac{5}{7}$ weeks between 1987 and 1990. Southwest paid Dolce TTD benefits for this period, but claimed a credit for all TTD paid.

In addition to his job at Southwest, Dolce sold real estate on a part-time basis. He used the offices of ERA R.M. Post (Post), a real estate agency, in exchange for a percentage of commissions from his real estate sales. Under his signed agreement with Post, Dolce was an independent contractor, and Post had no obligation or liability to him for worker's compensation, payroll taxes, and other taxes or liabilities. According to the agreement, Dolce was paid under the bonus program and held the position of sales associate. Dolce testified that he sold real estate on the weekends and in the evenings, but that there was no set number of hours he had to work weekly.

Dolce started selling real estate in 1985. In 1987, before his injury, Dolce completed nine sales. In 1988, Dolce completed 14 sales, earning $22,155.31, and in 1989 he completed 26 sales, earning $36,534.09. After his knee surgery in July 1990, Dolce was able to, but chose not to, return to work at Southwest. Instead, he became a sales associate at Re/Max First, a real estate agency. Between January 1990 and July 1990, Dolce completed 19 sales, earning $28,220.18.

At the arbitration hearing, Southwest did not dispute that Dolce injured his knee in the course of his employment. Further, Southwest did not dispute that Dolce was unable to work at Southwest for several different periods between 1987 and 1990. Instead, Southwest stated that Dolce was not temporarily and totally disabled during the period he was unable to work at Southwest because he earned income as a real estate associate during this period. Dolce contended that he was not an "employee" of Post and that his income from Post was simply occasional income that did not amount to employment that negated his TTD benefits.

The arbitrator awarded Dolce $840 in unpaid medical expenses and 60% loss of use of the right leg pursuant to sections 8(a) and 8(e) of the Act. 820 ILCS 305/8(a), (e) (West 1994). The arbitrator also awarded Southwest credit for all TTD it paid upon finding that Dolce worked regularly and continuously during the entire claimed period of disability. The Commission affirmed and adopted the arbitrator's decision.

On appeal, the circuit court remanded the matter to the Commission to consider matters related to Dolce's entitlement to TTD benefits. Specifically, the circuit court asked the Commission to

determine: (1) whether Dolce had a second job on a continuous and regular basis in addition to his job with Southwest prior to his injury; (2) if not, whether Dolce's part-time employment in 1987 was for occasional income requiring him to perform only some useful services; (3) whether Dolce increased the amount of time he spent earning the income in 1988, 1989, and 1990; and (4) after considering these matters, whether Dolce was entitled to any TTD benefits during any time of the claimed disability period.

On remand, the Commission found that Dolce was not entitled to TTD benefits. The Commission stated that, from the evidence and testimony presented, it could not draw an inference "one way or another as to whether [Dolce], prior to the accident, had a second employment on a continuous and regular basis in addition to his job with [Southwest]." The Commission added that the record showed that Dolce's part-time real estate employment in 1987 did not result in occasional income and that Dolce increased the amount of time he spent earning income from real estate in 1987 through 1990. Finally, the Commission stated that Dolce did not meet his burden of proving that he earned only occasional wages through his real estate sales while he was unable to work at Southwest. Consequently, the Commission found Dolce was not entitled to TTD benefits during the time of his claimed disability.

The circuit court confirmed the Commission's decision, and this appeal followed.

On appeal, Dolce contends that the Commission's decision is against the manifest weight of the evidence because the evidence shows that he was temporarily and totally disabled during the time he was unable to work at Southwest, even though he sold real estate during this period.

When reviewing a decision by the Commission, this court will not overturn findings of the Commission unless such findings are against the manifest weight of the evidence. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 549 (1991). For a finding to be contrary to the manifest weight of evidence, an opposite conclusion must be apparent. *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 742 (1994). Indeed, a decision is contrary to the manifest weight of evidence only when the court determines that no rational trier of fact could have agreed with the agency's decision. *Board of Trustees of Southern Illinois University v. Knight*, 163 Ill. App. 3d 289, 291 (1987).

■ First, Dolce contends that his real estate sales do not bar his TTD benefits because his sales are merely occasional income, which is allowed by the Act. We disagree. To prove temporary total disability, an employee must demonstrate not only that he did not work,

but also that he was unable to work. *Rambert v. Industrial Comm'n,* 133 Ill. App. 3d 895, 903 (1985). Evidence that an employee has been or is able to earn occasional wages or to perform certain useful services, however, does not preclude a finding of total disability. *E.R. Moore v. Industrial Comm'n,* 71 Ill. 2d 353, 361 (1978). Indeed, a claimant is not required to demonstrate total incapacity or helplessness before a permanent total disability award may be granted. *Interlake, Inc. v. Industrial Comm'n,* 86 Ill. 2d 168, 176 (1981). However, the claimant has the burden of proving each part of his claim. *Rambert,* 133 Ill. App. 3d at 902. Consequently, it is the claimant's responsibility to show that income earned while he was disabled was only occasional wages, and not income from employment in the labor market. See *Esposito v. Industrial Comm'n,* 186 Ill. App. 3d 728, 739-41 (1989).

Dolce points this court to three cases that he argues show that his real estate sales were only occasional wages that do not affect his TTD benefits. We find, however, that each of these cases is factually dissimilar to the case at bar. In *J.M. Jones Co. v. Industrial Comm'n,* 71 Ill. 2d 368, 372-73 (1978), the supreme court held that the claimant's driving a school bus an hour in the morning and an hour in the afternoon for seven months while he was unable to work did not preclude a finding that he was temporarily and totally disabled. Then, in *Firestone Tire & Rubber Co. v. Industrial Comm'n,* 76 Ill. 2d 197, 202 (1979), the supreme court held that a claimant's spending two days painting a house did not bar the award for temporary and total disability. Finally, in *Zenith Co. v. Industrial Comm'n,* 91 Ill. 2d 278, 286 (1982), the supreme court held that a claimant's selling hot dogs from a truck with his family for a few hours a day for six months out of a year did not amount to self-employment that barred his TTD benefits.

■ We find that the present case is distinguishable from each of these cases. In *J.M. Jones, Firestone,* and *Zenith,* the claimants worked for only a few hours a day and for only part of the period that they were disabled. In this case, however, Dolce regularly completed sales throughout the year and throughout the entire period that he was unable to work at Southwest. Certainly, the record shows that after his injury Dolce almost completed one sale per month for a three-year period, and for several months completed at least three sales. For example, in 1990 Dolce completed 19 sales in six months. Accordingly, Dolce's selling real estate for three years is significantly different than the *J.M. Jones* claimant's driving a bus for three hours a day, the *Firestone* claimant's painting a house for two days, and the *Zenith* claimant's selling hot dogs for a few hours

for a six-month period. As a result, the Commission's decision that the income Dolce received from his sales was regular and continuous, and not occasional, is not against the manifest weight of the evidence.

Additionally, Dolce argues that denying him benefits because of his ability to earn income from selling real estate while he was unable to work at Southwest is contrary to the purpose of the Act. Dolce states that many people earn income from two jobs, and to deny a person benefits from an injury at one job simply because that person is still able to work at his second job is a "disaster for anyone ambitious enough to generate income in addition to wages who then suffers an injury at the employment." We disagree with Dolce's interpretation of the Act.

A person is totally disabled when he cannot perform any services except those that are so limited in quantity, dependability, or quality that there is no reasonably stable market for them. *Interlake*, 86 Ill. 2d at 176. Accordingly, temporary total disability occurs when an employee is unable to perform any work except that for which no labor market of reasonable stability exists. *Zenith*, 91 Ill. 2d at 287.

Dolce claims that he was not employed in a competitive labor market because he did not have an employer-employee relationship with Post. In supporting this argument, Dolce relies on the independent contractor status of his sales associate position, and that the Act does not consider real estate salesmen as employees for the purpose of coverage unless the employer elects to be covered by the Act. In other words, Dolce contends that the Act's definition of "employee" for the purposes of coverage should be applied to whether his sales associate position can be considered employment that bars his TTD benefits. We decline to accept Dolce's argument.

Section 10 of the Act states the provisions for concurrent employment. 820 ILCS 305/10 (West 1994). Accordingly, the Act does protect persons who earn income from more than one job—as long as both jobs meet the definition of employer/employee under the Act. In the present case, Dolce, because of his independent contractor status with Post, is not considered an employee under the Act. However, simply because he is not an employee for the purposes of coverage does not mean that he automatically is not considered to be employed in a competitive labor market. The Act's definition of "employee" applies when determining whether coverage is available. There is nothing in the Act that suggests that this definition should be used to determine whether a person is an employee in a competitive labor market for the purpose of TTD benefits.

Contrary to Dolce's position, this interpretation is precisely con-

sistent with the underlying purpose of the Act's allowing a person to earn occasional wages without affecting his TTD status. In his treatise on worker's compensation laws, Professor Larson discusses the amount and character of work a person is able to do without forfeiting totally disabled status. Professor Larson notes:

"The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps." 1C A. Larson, Workmen's Compensation Law § 57.51(a), at 10—288 through 10—329 (1996).

This explanation reveals that the definition of "employee" is immaterial when determining whether a person is employed in a competitive labor market for the purpose of receiving TTD benefits. Instead, the test concerns the circumstances surrounding the disabled person's ability to work at a particular job. Indeed, as Professor Larson notes, and as the Illinois Supreme Court has held, the test for whether a person may receive TTD benefits is whether that person is unable to work in a stable labor market. See *Zenith*, 91 Ill. 2d at 287.

In the present case, Dolce did not rely on friends or business booms for his income. Further, his employment as a real estate broker was not dependent on good luck or his superhuman efforts. On the contrary, Dolce earned income for three years by selling real estate. The number of his sales progressed yearly, as did his income. Finally, the real estate market can even be considered competitive because brokers compete with each other to sell houses. As a result, the evidence in the record shows that Dolce worked consistently and regularly in a stable, competitive labor market. Thus, we find that the Commission's decision was not against the manifest weight of evidence.

In conclusion, we find that from an evaluation of the record, the Commission could have concluded that Dolce's real estate sales constituted employment within a stable labor market, and not occasional income. As a result, the Commission's decision is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE, and RARICK, JJ., concur.