MECHANICAL DEVICES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Michael Johnson, Appellee).—MICHAEL JOHNSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mechanical Devices, Appellee).

Fourth District (Industrial Commission Division)  Nos. 4—02—0497WC, 4—02—0544WC cons.

Argued September 9, 2003.—Opinion filed October 29, 2003.

McCULLOUGH, P.J., specially concurring.

Christopher R. Doscotch (argued), of Janssen Law Center, of Peoria, for Michael Johnson.

Karen L. Kendall, Brad A. Elward (argued), Bradford B. Ingram, and Craig S. Young, all of Heyl, Royster, Voelker & Allen, of Peoria, for Mechanical Devices.

JUSTICE CALLUM delivered the opinion of the court:

Claimant, Michael Johnson, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2000)) for injuries to his shoulder and back. The arbitrator found that claimant had sustained accidental injuries arising out of and in the course of his employment by Mechanical Devices (employer). The arbitrator awarded claimant medical expenses and temporary total disability (TTD) benefits for 22 weeks. He denied prospective medical benefits and penalties. The Industrial Commission (Commission) reversed the arbitrator in part and found that claimant was entitled to TTD benefits for a total of $52^1/_7$ weeks. The Commission denied prospective medical benefits and penalties. The parties appealed, and the circuit court consolidated the appeals and confirmed the Commission's decision. Employer now appeals the Commission's TTD award, and claimant appeals the Commission's denial of penalties and attorney fees. We affirm the TTD award, as modified, and we affirm the denial of penalties and fees.

## BACKGROUND

On May 30, 1997, claimant began working for employer as a machinist. On February 2, 1999, claimant attempted to catch with his right arm a 150- to 180-pound part that slipped from a lifting device. Claimant jerked his right shoulder and back, and he twisted to the right. He experienced immediate pain in his right shoulder and was driven to Dr. Lawrence Nord, an orthopedic surgeon and employer's doctor. Dr. Nord diagnosed right shoulder strain.

Claimant testified that he began to experience lower back pain the day after the accident. On February 9, 1999, Dr. Nord diagnosed claimant with right shoulder strain and lumbar strain and ordered an MRI, which indicated a rotator cuff tear. On March 17, 1999, claimant underwent shoulder surgery and was later diagnosed with right shoulder impingement. Claimant began physical therapy in March

1999. On April 28, 1999, employer terminated claimant's employment because claimant had exhausted his medical leave time.

At the time of his accident, claimant also worked at the YWCA as a shuttle bus driver. He began working with the YWCA on October 11, 1998, and averaged between 20 and 25 hours per week. Claimant stopped working at the YWCA after his accident.

In notes and letters dated March 18 and April 12, 1999, Dr. Nord noted that claimant's back problems were related to his injury. However, in a letter dated May 17, 1999, Dr. Nord stated that claimant's injury to his back was minimal and that his injury was not substantially related to his back discomfort. Dr. Nord also wrote that claimant's injury may have temporarily aggravated a preexisting condition in claimant's spine. Dr. Nord testified that he revised his opinion between the earlier letters and May 17 based on his review of claimant's myelogram and another physician's opinion.

On June 3, 1999, Dr. Nord released claimant to work with restrictions. These included: standing and sitting for limited periods; no climbing; occasional bending; and no lifting of objects over 10 pounds. Employer, which had commenced paying claimant TTD benefits from the date of the accident, stopped paying as of June 3, 1999.

Dr. Nord examined claimant for the last time on July 1, 1999. He testified that claimant was not at maximum medical improvement with respect to his right shoulder and was not able to work full duty with his right shoulder. Dr. Nord stated that claimant's accident was the causative factor in his impingement syndrome and his need for shoulder surgery. However, Dr. Nord also testified that the impingement syndrome was not caused by the accident; rather, it was present before the accident.

Dr. Nord further testified that claimant had congenital spinal stenosis. He stated that, on July 1, 1999, claimant was not at maximum medical improvement regarding his lower back and that claimant's disc bulge/herniation could possibly have been caused by the accident. Dr. Nord stated that claimant's work restrictions were 90% causally related to his congenital condition. He did not recommend decompressive surgery for claimant's back problems. Instead, Dr. Nord recommended weight loss, physical therapy, and anti-inflammatory medications to treat claimant's back, and he recommended exercise to treat claimant's shoulder condition.

On July 6, 1999, claimant returned to work at the YWCA. Claimant testified that the job was within his work restrictions. It included breaks of up to two hours; involved no kneeling, climbing, or lifting of over 10 pounds; and did not require him to provide passengers with special assistance. He drove a shuttle bus an average of 15 hours per

week between July 1999 and January 2000, the date of the arbitration hearing. The bus had automatic transmission and a power seat.

On July 26, 1999, claimant enrolled full-time in cosmetology school. He attended classes four days per week from 4 p.m. to 10 p.m. The training involved classroom instruction and hands-on training that included standing and sitting while cutting hair. Claimant testified that he did not have to lift any objects that weighed over 10 pounds and that he did not have to stand for 5 or 6 hours straight or sit for 4 hours straight.

At about this time, claimant turned down a job at Federal Express. He testified that he had applied for the job before his injuries and turned it down because it was not within his work restrictions, as it involved lifting packages and unloading a truck. Claimant also turned down a job from Hertz because it involved moving cars, whereas he had applied for a customer service job.

Dr. Robert Martin, claimant's independent medical examiner, reviewed claimant's medical records and examined claimant on June 10, 1999. He diagnosed impingement syndrome caused by a rotator cuff tear regarding claimant's right shoulder. Dr. Martin testified that claimant's tendon tear, impingement syndrome, and disc herniation were causally related to his accident. Dr. Martin also testified that claimant's shoulder required physical therapy and that claimant will have permanent impairment as a result of the injury. As of June 10, 1999, Dr. Martin stated that claimant could have worked with restrictions.

Dr. Alexander Ghanayem, an orthopedic surgeon, examined claimant on August 27, 1999. He stated that claimant had a developmentally narrow spinal cord and stenosis secondary to disc protrusion at the L5-S1 level. Dr. Ghanayem diagnosed claimant with symptomatic disc herniation and symptomatic spinal stenosis. He testified that the accident may have rendered claimant's asymptomatic disc herniation symptomatic. Dr. Ghanayem stated that claimant's disc herniation, tendon tear, and impingement syndrome were caused or aggravated by the accident. Claimant could likely drive a shuttle bus if he could stand and stretch occasionally and move around.

Dr. Philip George, employer's independent medical examiner, stated in a report dated January 10, 2000, that there was a causal relationship between claimant's accident and his right shoulder and lower back problems. Claimant could work with restrictions. Dr. George did not consider claimant a candidate for spinal surgery; instead, he recommended weight loss, exercise, and anti-inflammatory medication.

The arbitrator rendered his decision on June 30, 2000. He found

that as a result of the accident claimant was temporarily and totally disabled from February 3, 1999, through July 6, 1999, and he awarded claimant TTD benefits for that period, a total of 22 weeks. The arbitrator also awarded compensation accrued from February 2, 1999, through February 3, 2000, the date of the arbitration hearing, plus medical costs. The arbitrator found that there was insufficient evidence to award or order future back surgery and thus denied claimant's prospective medical claims. The arbitrator also denied penalties, finding that there existed substantial disputes in the case.

Claimant appealed. The Commission found that claimant had not reached maximum medical improvement and was thus entitled to TTD benefits through February 2, 2000, a total of $52^{1}/_{7}$ weeks. The Commission found that claimant presented credible medical evidence to support a relationship between his shoulder condition and the accident. Thus, it concluded that the injuries were causally related to claimant's employment. The Commission also found that Drs. George, Ghanayem, and Martin's opinions more persuasive than Dr. Nord's and concluded that claimant presented credible evidence regarding his lower back pain condition and the injury.

The Commission further found that claimant's YWCA job was within his work restrictions. It awarded employer a credit for wages claimant earned at the YWCA after his return to work there in July 1999. The Commission noted that claimant turned down jobs at Federal Express and Hertz, but stated that employer never obtained a vocational assessment of claimant to show what types of jobs might be suitable for him. It concluded that the fact that claimant could have looked for work was not dispositive on the issue of entitlement to TTD benefits. The Commission further commented that claimant's enrollment in cosmetology school did not in and of itself disqualify claimant from TTD benefits.

The Commission denied penalties and attorney fees, finding that a reasonable dispute existed regarding claimant's entitlement to TTD benefits after June 2, 1999. It further found that employer's actions were not unreasonable or vexatious. The Commission remanded the case to the arbitrator for a hearing on all other issues pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 332-35 (1980).

One commissioner dissented from the decision, arguing that claimant was not entitled to benefits for a congenital condition. The dissent contended that claimant had recovered and took issue with the majority's grant of a credit for YWCA wages, arguing that the majority failed to specify the wage amount. The dissent further challenged the majority's finding that claimant was totally disabled and pointed to his work driving a bus. Finally, the dissent criticized the majority for legislating a "temporary partial" benefit into the Act.

The parties appealed, and the circuit court consolidated the appeals and confirmed the Commission's decision. The parties appeal again. Employer argues that the Commission erred in granting TTD benefits for the period after claimant was released to return to work with restrictions. Claimant appeals the Commission's denial of penalties and attorney fees.

## ANALYSIS

## I. TEMPORARY TOTAL DISABILITY

Employer argues that the Commission erred in awarding claimant TTD benefits through the date of the arbitration hearing. It contends that the benefits should have terminated on June 3, 1999, when claimant was released to work with restrictions. Employer further argues that claimant's work for the YWCA, his attendance at cosmetology school, and his rejection of several job offers are all factors that should have foreclosed the extension of TTD benefits past claimant's release-to-work date. Finally, it maintains that the TTD award was improper because the Commission effectively legislated a partial temporary wage differential award when it granted employer an offset for claimant's YWCA wages.

■ The duration of TTD benefits is a question of fact. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118-19 (1990). The Commission's determination of the duration of TTD benefits will not be set aside on review unless it is contrary to the manifest weight of the evidence. *Pietrzak v. Industrial Comm'n*, 329 Ill. App. 3d 828, 832-33 (2002). The test for determining whether a factual finding of the Commission is against the manifest weight of the evidence "is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination." *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450 (1995).

■ To establish entitlement to TTD benefits, a claimant must demonstrate not only that he or she did not work, but also that the claimant was unable to work. *City of Granite City v. Industrial Comm'n*, 279 Ill. App. 3d 1087, 1090 (1996). It is irrelevant whether the claimant could have looked for work. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 318 Ill. App. 3d 170, 177 (2000). The dispositive test is whether the claimant's condition has stabilized, that is, whether the claimant has reached maximum medical improvement. *Freeman*, 318 Ill. App. 3d at 175-76. Once an injured employee's physical condition has stabilized, the employee is no longer eligible for TTD benefits because the disabling condition has become permanent. *Manis v. Industrial Comm'n*, 230 Ill. App. 3d 657, 660 (1992).

■ Temporary total disability benefits are awarded for the period from when an employee is injured until he or she has recovered as much as the character of the injury will permit. See *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 880 (1990); see also *Kuhl v. Industrial Comm'n*, 126 Ill. App. 3d 946, 949 (1984) (TTD is awarded between the date of injury and the date when the employee's condition has stabilized).

■ The factors to be considered in determining whether a claimant has reached maximum medical improvement include: (1) a release to return to work; (2) the medical testimony concerning the claimant's injury; (3) the extent of the injury; and (4) "most importantly," whether the injury has stabilized. *Beuse v. Industrial Comm'n*, 299 Ill. App. 3d 180, 183 (1998); see also *Freeman*, 318 Ill. App. 3d at 178-79 (in addition, compliance with a prescribed rehabilitation program may be evidence of whether a claimant has reached maximum medical improvement).

We address first employer's arguments relating to the first factor. Employer argues that the Commission erroneously focused on one of the factors—stabilization—in determining whether claimant had reached maximum medical improvement and ignored the fact that claimant had been released to return to work. Employer suggests that claimant's work at the YWCA indicates his ability to work in a stable job market and in an unlimited capacity.

■ A claimant's earning of occasional wages does not necessarily preclude a finding of temporary total disability. See *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 361 (1978). In *J.M. Jones Co. v. Industrial Comm'n*, 71 Ill. 2d 368, 372-73 (1978), the supreme court held that driving a bus for about three hours per day for seven months following the claimant's injury did not require reversal of the Commission's TTD finding. In *Zenith Co. v. Industrial Comm'n*, 91 Ill. 2d 278, 282, 286 (1982), the supreme court held that the claimant's operation of a hot dog vending truck for 1½ hours per day for about six months did not preclude the award of TTD benefits.

Employer suggests that *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117 (1996), is instructive. In *Dolce*, the claimant, in addition to working his full-time job, sold real estate on a part-time basis. The claimant testified that he sold property on weekends and in the evenings and that he did not have to work a set number of hours. Before the claimant's injury at his full-time job, the claimant had completed as many as 26 property sales per year. Following his injury, the claimant chose not to return to work to his full-time job and became a sales associate for a real estate agency. The court rejected the claimant's argument that his income was simply occasional

income, where the claimant worked consistently in a stable, competitive labor market selling approximately one property per month for a three-year period. Accordingly, it affirmed the Commission's decision that the claimant's income was regular and continuous.

■ Here, we conclude that claimant's work pattern is closer to that of the claimants in *Zenith* and *J.M. Jones* than it is to the claimant in *Dolce*. When claimant returned to the YWCA job in July, he averaged 10 to 15 hours of work per week, which averages to 3 hours per day and is similar to the *J.M. Jones* claimant's work hours. Claimant testified that the job was within his work restrictions, in that it did not require claimant to offer any special assistance to passengers, to do any lifting or climbing, or to do any bending.

We reject employer's focus on the period from July 6, 1999, to September 30, 1999, during which claimant worked between 24$^{1}$/$_{2}$ and 41$^{1}$/$_{4}$ hours per week. We note that, from his return to the YWCA in July 1999 through the date of the arbitration hearing in early January 2000, claimant averaged 15 hours per week working for the YWCA. We conclude that the Commission's decision is consistent with the holding in *J.M. Jones*.

■ Employer next contends that claimant's rejection of two job offers terminates its obligation to pay TTD benefits. Employer contends that claimant turned down the Federal Express and Hertz jobs because he did not feel that he could do them and not because he was unable to do the work. Employer argues that the jobs were within claimant's job restrictions and that claimant is capable of working in a reasonably stable job market as a bus driver. Thus he is capable of performing work and simply chooses not to do so.

Again, we reject employer's argument. The fact that claimant could have looked for work is not the focus in TTD cases. See *Freeman*, 318 Ill. App. 3d at 177-78 ("[A]n argument focusing on whether the claimant is available for work in some other capacity and could and should have sought alternative employment misses the mark in TTD cases. The dispositive question is whether the claimant's condition had 'stabilized' "). Here, claimant had been looking for work and was offered two positions. However, he testified that the jobs were not within his work restrictions. Claimant stated that the Federal Express job, for which he had applied before his injury, required that he lift heavy boxes. The Hertz job was not the one for which he had applied and involved frequent relocation of cars on the employer's lot. We conclude that the Commission did not err in determining that turning down these jobs was not dispositive on the issue of TTD benefit entitlement.

■ Addressing the remaining factors in the maximum-medical-

improvement determination, the medical evidence concerning claimant's injury was unanimous in recommending continued treatment in either the form of additional surgery or physical therapy, weight loss, and medications. Regarding the extent of claimant's injury, Dr. Martin testified that claimant will have permanent impairment as a result of his injury. Finally, regarding the most important factor, stabilization, Drs. Martin, Nord, Ghanayem, and George all recommended additional treatment for claimant. None of the physicians testified that claimant's condition had stabilized, and Dr. Nord testified that claimant had not reached maximum medical improvement with respect to either his shoulder or back injuries.

■ Employer next asserts that claimant's attendance at cosmetology school, which included physical activity as part of the course work, is incompatible with claimant's inability to work. We disagree. School attendance, in and of itself, does not disqualify an injured worker from receiving TTD benefits. See *Mobil Oil Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 616, 627-28 (1999) (claimant's status as a full-time student does not disqualify him from receiving TTD benefits where the claimant has not reached maximum medical improvement). Here, claimant testified that the hands-on portion of school training included a stand or sit option. He did not have to lift heavy objects or sit for more than four hours straight. Further, no doctor stated that claimant had reached maximum medical improvement. We thus reject employer's argument that claimant's school attendance conflicted with his inability to work.

Employer's final argument challenging the TTD award is that the Commission erred by granting to employer a credit against its TTD benefit obligation for wages claimant earned at the YWCA. Employer argues that the Commission improperly legislated a "partial temporary" wage differential award, a benefit not contemplated by the Act.

■ ■ A temporary partial disability benefit is awarded when an employee (1) is able to work, but with a temporary decrease in wage-earning capacity, or (2) is not capable of returning to substantially similar employment, but is able to perform other work consistent with his or her disability. See Modern Workers Compensation § 200:7 (West 2003). In Illinois, a "temporary partial" disability benefit is *not* contemplated under the Act (see 820 ILCS 305/8 (West 2000)). Thus, the Commission erred when it effectively awarded a temporary partial disability benefit by reducing claimant's TTD award by the wages he earned at the YWCA.

However, the Commission's action does not warrant reversal because, as we determined above, the Commission correctly concluded that claimant was entitled to TTD benefits. Therefore, we affirm the

Commission's decision awarding claimant TTD benefits for a total of 52¹/₇ weeks, but we modify it by eliminating the offset for claimant's YWCA earnings.

## II. PENALTIES AND FEES

Next, claimant appeals the Commission's denial of attorney fees under section 16 of the Act and penalties under sections 19(k) and 19(*l*) of the Act (820 ILCS 305/16, 19(k), (*l*) (West 2000)).

■ The Commission's determination of whether a claimant is entitled to additional compensation and attorney fees is a factual question and will not be disturbed on review unless it is against the manifest weight of the evidence. *Pietrzak*, 329 Ill. App. 3d at 836.

### A. Section 19(*l*) Penalties

Claimant seeks section 19(*l*) penalties based on employer's failure to pay TTD benefits after June 2, 1999. Claimant asserts that employer has not satisfied its burden to show cause for its nonpayment of benefits. We disagree.

■ Section 19(*l*) provides:

"In case the employer or his insurance carrier shall without good and just cause fail, neglect, refuse or unreasonably delay the payment of weekly compensation benefits due to an injured employee during the period of temporary total disability the arbitrator or the Commission shall allow to the employee additional compensation in the sum of $10 per day for each day that a weekly compensation payment has been so withheld or refused, provided that such additional compensation shall not exceed the sum of $2,500. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." 820 ILCS 305/19(*l*) (West 2000).

■ The section 19(*l*) penalty is in the nature of a late fee. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998). Assessment of the penalty is mandatory "[i]f the payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay." *McMahan*, 183 Ill. 2d at 515. In determining whether an employer has "good and just cause" in failing to pay or delaying payment of benefits, the standard is reasonableness. *McMahan*, 183 Ill. 2d at 515.

■ Generally, an employer's reasonable and good-faith challenge to liability does not warrant the imposition of penalties. *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173 (2001). When the employer acts in reliance upon reasonable medical opinion or when there are conflicting medical opinions, penalties ordinarily are not imposed. *Matlock*, 321 Ill. App. 3d at 173.

Here, claimant argues that employer had no reasonable basis to

terminate TTD benefit payments as of June 3, 1999, his release-to-work date because, at that time, no physician had stated that claimant had reached maximum medical improvement.

Employer contends that, from June 3, 1999, to the date that claimant returned to the YWCA, claimant had been released to return to work by Dr. Nord and was looking for work, as evidenced by his rejection of positions with Federal Express and Hertz. Employer further argues that it relied on Dr. Nord's opinion that claimant's back condition was congenital and his statement that he did not believe that claimant's condition was causally related to his work accident. Employer suggests that it thus had a good-faith basis to terminate claimant's TTD benefits before claimant was declared to have reached maximum medical improvement. We agree.

● Employer relied on one medical expert's opinion that claimant's condition was not causally related to his injury and that his back condition was congenital. Although Dr. Nord's testimony regarding causation was not consistent, we defer to the Commission's resolution of such conflicts. Thus, we conclude that the Commission's denial of section 19(*l*) penalties was not against the manifest weight of the evidence.

### B. Section 19(k) Penalties and Section 16 Attorney Fees

Claimant next challenges the Commission's denial of section 19(k) penalties and section 16 attorney fees. Claimant argues that he is entitled to section 19(k) penalties for employer's failure to pay back-related medical expenses and for its failure to pay TTD benefits after June 2, 1999.

Section 19(k) penalties are imposed when:

"[T]here has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay[.]" 820 ILCS 305/19(k) (West 2000).

Imposition of section 19(k) penalties is discretionary. *McMahan*, 183 Ill. 2d at 515. They are assessed when a benefit payment delay is deliberate or results from bad faith or "improper purpose." *McMahan*, 183 Ill. 2d at 515. Section 16 applies in the same circumstances. *McMahan*, 183 Ill. 2d at 515. The imposition of section 19(k) penalties and section 16 attorney fees requires a higher standard of proof than an award of additional compensation under section 19(*l*). *McMahan*, 183 Ill. 2d at 514. Section 19(k) penalties may be awarded for an employer's failure to pay medical expenses. *McMahan*, 183 Ill. 2d at 512.

Claimant here essentially reasserts the arguments that he

presented in arguing for the imposition of section 19(*l*) penalties. He argues that he had not reached maximum medical improvement and that employer could not have reasonably relied upon Dr. Nord's conflicting testimony. Given that we have determined that employer's conduct did not meet the lower standard applicable for imposition of section 19(*l*) penalties, we conclude that it does not meet the higher standard required for the imposition of section 19(k) penalties or section 16 attorney fees.

Thus, we affirm the Commission's denial of penalties under sections 19(k) and 19(*l*) and attorney fees under section 16 of the Act (820 ILCS 305/16, 19(k), (*l*) (West 2000)).

For the foregoing reasons and with respect to both appeals, we affirm, as modified, the judgment of the circuit court confirming the decision of the Commission, and we remand the cause to the Commission pursuant to *Thomas*, 78 Ill. 2d at 332-35.

Affirmed, as modified; cause remanded.

HOFFMAN, HOLDRIDGE, and GOLDENHERSH, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:
With considerable reluctance, I concur.

The Commission in its decision, paragraph 7, "found" claimant returned to his part-time position as a bus driver with the YMCA, but the return to that work did not terminate his right to temporary total disability. The Commission further found that the "respondent is entitled to a credit for any wages earned subsequent to July 8, 1999, at the YMCA against the temporary total disability benefits."

However, the Commission's order stated "that Respondent shall pay to Petitioner the sum of $343.00 per week for a period of 52¹/₇ weeks." The order did not mention any credit. Likewise, the circuit court's order does not mention any credit but simply ordered "entitlement to TTD *** confirmed."

The Commission's finding as to credit is further complicated, as suggested by the dissenting commissioner, "no one can tell how much the credit is."

If we are to approve awards of TTD in cases similar to the factual scenario here, it would be worthwhile for the legislature to provide for credit. Presently section 8(b)(1) of the Act states the compensation rate for temporary total disability shall be equal to 66²/₃% of the employee's average weekly wage. There is no mention of credit against that amount.

Although I do not dissent, I urge the Commission and this court

be wary of completely eroding the word "total" in "temporary total disability."