PEABODY COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ronald York, Appellee).

Fifth District    No. 5—03—0546WC

Opinion filed June 30, 2004.

Kevin M. Hazlett, of Kevin M. Hazlett, P.C., of Swansea, for appellant.

Eric Kirkpatrick, of Kirkpatrick Law Offices, P.C., of Belleville, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:
Peabody Coal Company (Peabody) appeals from an order of the

circuit court confirming a decision of the Industrial Commission (Commission), awarding the claimant, Ronald York, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)). For the reasons that follow, we affirm.

The claimant filed an application for adjustment of claim pursuant to the Act, alleging that, while in the employ of Peabody, he injured his back as he was lifting a spring from a haulage truck. Following a hearing, an arbitrator found that the claimant sustained accidental injuries arising out of and in the course of his employment with Peabody and that, as a result, he is permanently and totally disabled. The arbitrator awarded the claimant temporary total disability (TTD) benefits for the 119-week period from March 13, 1997, through June 25, 1999, and permanent total disability (PTD) benefits in the sum of $476.37 per week for life, commencing on June 25, 1999.

Peabody sought a review of the arbitrator's decision before the Commission. The case was assigned to a panel consisting of Commissioners Gilgis, Kinnaman, and Rink, and the matter was argued on December 11, 2002. A decision in the matter was issued by the Commission on February 10, 2003. That decision was authored by Commissioner Gilgis with Commissioner Kinnaman concurring. Diane Ford issued a concurring opinion which states that, subsequent to oral argument and "prior to the departure of Commissioner Rink on December 31, 2002," a majority of the panel members had reached agreement as to the results of the review and she was signing the decision in accordance with the holding in *Zeigler v. Industrial Comm'n*, 51 Ill. 2d 137, 281 N.E.2d 342 (1972).

The decision of February 10, 2003, in which Ford specially concurred, modified the arbitrator's decision as it relates to the award of TTD and PTD benefits to the claimant. The Commission awarded the claimant TTD benefits for the 89$^6$/7-week period from March 13, 1997, through December 2, 1998, and PTD benefits for life commencing on December 2, 1998. In all other respects however, the arbitrator's decision was affirmed and adopted by the Commission.

Peabody sought a judicial review of the Commission's decision in the circuit court of Saline County. The circuit court confirmed the decision and this appeal followed.

In its initial brief before this court, Peabody argues that the Commission's award of PTD benefits to the claimant is against the manifest weight of the evidence and it requests that we reverse the Commission in this regard and award the claimant 50% loss of use of the body as a whole under section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 1996)). After the parties had briefed the case, this court, *sua sponte*, entered an order directing them to file supplemental briefs

addressing the issue of the validity of the Commission's decision as a result of Ford's participation. Neither party contested the validity of the Commission's decision before the circuit court.

The manner in which Ford came to be a member of the panel that issued and filed the Commission's written decision in this case is a matter of public record and was concisely set forth in our recent opinion in *Max Shepard, Inc. v. Industrial Comm'n*, 348 Ill. App. 3d 893, 898-99 (2004):

> "Robert Madigan was appointed as a Commissioner of the Illinois Industrial Commission for a term commencing on the third Monday in January 2001 and ending on January 17, 2005. When Madigan resigned, then-Governor George Ryan sent a letter to the Illinois Secretary of State dated July 3, 2002, stating that, effective July 8, 2002, he made a temporary appointment of Paul Rink to the position formerly held by Commissioner Madigan 'until a permanent appointment can be made.' The letter also stated that Rink's appointment would expire on December 31, 2002. On that same day, Governor Ryan issued another letter to the Secretary of State appointing Diane Ford as a commissioner, effective January 17, 2003, to the position held by Rink. Both appointments were transmitted to the Senate on November 21, 2002, and approved on December 4, 2002."

The Senate's record of confirmation lists Rink's appointment before that of Ford.

Prior to addressing the specific issue raised by Peabody on appeal, we will address the question of whether the Commission's decision is void as a matter of law.

■ The actions of an administrative agency for which there is no statutory authority are void and subject to attack at any time. *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 166, 775 N.E.2d 936 (2002). Even in cases such as this where the parties have not raised the issue, the court has an independent duty to vacate and expunge void orders of the Commission and may raise the issue *sua sponte*. *Daniels*, 201 Ill. 2d at 166.

■ Section 19(e) of the Act provides, in relevant part, as follows:

> "In reviewing decisions of an arbitrator the Commission shall award such temporary compensation, permanent compensation and other payments as are due under this Act. The Commission shall file in its office its decision thereon, and shall immediately send to each party or his attorney a copy of such decision and a notification of the time when it was filed. ***
>
> In the event either party requests oral argument, such argument shall be held before a panel of 3 members of the Commission *** pursuant to the rules and regulations of the Commission. *** A

decision of the Commission shall be approved by a majority of Commissioners present at such hearing ***." 820 ILCS 305/19(e) (West 2002).

The making of a decision on review is an act of the Commission. "The formalizing of the decision by preparing the written document, filing it in the Commission's office and sending copies thereof to the parties as required by the Act are likewise acts of the Commission independent of the act of making the decision." *Zeigler*, 51 Ill. 2d at 142. However, these acts need not be performed by a Commission composed of the same three members. *Zeigler*, 51 Ill. 2d at 142.

In this case, Peabody's review was heard by a three-member panel composed of Commissioners Gilgis, Kinnaman, and Rink. Clearly, a majority of those commissioners, namely Gilgis and Kinnaman, approved of the panel's decision in the matter. The written decision, however, was signed by Commissioners Gilgis and Kinnaman, with Ford, acting in the capacity of a commissioner, filing a separate concurring opinion. The written decision, along with Ford's separate concurrence, was filed in the Commission's office on February 10, 2003. Facially, there appears to have been compliance with section 19(e) of the Act, as interpreted by the supreme court in *Zeigler*. The issue, however, is whether Ford was a validly appointed commissioner and, if she was not, the effect that circumstance has on the validity of the Commission's decision.

■ Section 13 of the Act provides, in relevant part:

"The members [of the Industrial Commission] shall be appointed by the Governor, with the advice and consent of the Senate, as follows:

***

(b) Members shall *** be appointed to hold office for terms of 4 years from the third Monday in January of the year of their appointment, and until their successors are appointed and qualified. ***

***

In case of a vacancy in the office of a Commissioner during the recess of the Senate, the Governor shall make a temporary appointment until the next meeting of the Senate, when he shall nominate some person to fill such office. Any person so nominated who is confirmed by the Senate shall hold office during the remainder of the term and until his successor is appointed and qualified." 820 ILCS 305/13 (West 2002).

When the Senate confirmed Rink's appointment to the position formerly held by Commissioner Madigan, Rink took over the balance of Madigan's term, which does not expire until January 17, 2005. Although the Governor is authorized to make a temporary appoint-

ment while the Senate is in recess, nothing in section 13 allows the Governor to limit the term of a commissioner. The term is set by statute. The Senate approved Rink's appointment and, by statute, he is to hold office until the expiration of Madigan's term, despite Governor Ryan's attempt to limit the term.

Once the Senate approved Rink's appointment, there was no vacancy in the office of commissioner to which Ford could be appointed. As the federal district court noted in *Ford v. Blagojevich*, 260 F. Supp. 2d 700, 709 (C.D. Ill. 2003), the existence of a vacancy is a condition precedent to the exercise of the power to fill the vacancy. The facts surrounding Ford's appointment to replace Rink lead us to conclude, as did the court in *Ford v. Blagojevich*, 260 F. Supp. 2d at 711, that Ford's appointment to replace Rink violated section 13 of the Act. We hold, therefore, that Ford was never validly appointed a commissioner of the Illinois Industrial Commission.

In *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 775 N.E.2d 936 (2002), our supreme court faced a circumstance in which an illegally constituted three-member panel of the Commission issued a decision on review. *Daniels*, 201 Ill. 2d at 161-67. In a plurality opinion, the supreme court vacated the Commission's decision and remanded the matter to the Commission for a decision by a legally constituted panel. *Daniels*, 201 Ill. 2d at 161-78. The four justices in the majority, however, did not agree on the reasoning underlying their judgment.

Chief Justice Harrison, apparently joined by Justice Kilbride, held that the decision in which the two illegally appointed commissioners participated was void. *Daniels*, 201 Ill. 2d at 165-67. Justice McMorrow filed a special concurring opinion, in which Justice Freeman joined, holding that the decision was not void. *Daniels*, 201 Ill. 2d at 173 (McMorrow, J., specially concurring, joined by Freeman, J.) Applying equitable principles, Justice McMorrow concluded that Daniels, who raised the issue of the validity of the Commission's decision, should be granted a new hearing but, in other cases, the *de facto* officer doctrine would apply to maintain the validity of the decisions rendered by the Commission in which the two illegally appointed panel members participated. *Daniels*, 201 Ill. 2d at 175-77 (McMorrow, J., specially concurring, joined by Freeman, J.).

Justice Thomas, in a dissent joined in by Justices Fitzgerald and Garman, held that the Commission's decision at issue was neither void on its face nor subject to collateral attack. *Daniels*, 201 Ill. 2d at 185 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.). Justice Thomas reasoned that an agency's order is void only if the agency lacks jurisdiction over the parties or the subject matter, or lacks the inherent power to make or enter the particular order

involved; none of which circumstances was apparent on the face of the Commission's decision at issue. He concluded that Daniels' attack on the Commission's decision by reason of the illegal appointment of two participating panel members was an impermissible collateral attack. *Daniels*, 201 Ill. 2d at 184-85 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.). Justice Fitzgerald also filed a separate dissent in which he found the two illegally appointed panel members to be *de facto* commissioners with authority to act. *Daniels*, 201 Ill. 2d at 178-79 (Fitzgerald, J., dissenting.).

Although the supreme court's decision in *Daniels* is a plurality opinion, it is clear that five of seven justices agreed with the proposition that the Commission's decision at issue was not void by reason of the participation of two illegally appointed commissioners. Justice McMorrow's special concurring opinion in *Daniels*, in which Justice Freeman joined, states that "[t]he common law *de facto* officer doctrine operates to prevent invalidation of [the decision]." *Daniels*, 201 Ill. 2d at 173 (McMorrow, J., specially concurring, joined by Freeman, J.). Although Justice Thomas' dissent in *Daniels* does not directly address the *de facto* officer doctrine (see *Daniels*, 201 Ill. 2d at 181-86 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.)), his dissent in *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 204-10, 775 N.E.2d 908 (2002), in which Justices Fitzgerald and Garman joined, states that decisions rendered by the two illegally appointed commissioners are either "*de facto* valid" or void; "[t]here is no middle ground." *Baggett*, 201 Ill. 2d at 209 (Thomas, J., dissenting, joined by Fitzgerald and Garman, JJ.).

■ Our analysis of *Daniels* and *Baggett* leads us to conclude that application of the *de facto* officer doctrine prevents the invalidation of the Commission's decision in this case. Under the *de facto* officer doctrine, a person such as Ford who is actually performing the duties of an office under color of title is considered to be an officer *de facto*, and her acts as such officer are valid so far as the public or third parties who have an interest in them are concerned. *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186-87, 802 N.E.2d 1156 (2003).

Additionally, unlike the claimant in *Daniels*, Peabody never challenged the validity of the Commission's decision based upon the participation of an illegally appointed panel member. This court raised the issue *sua sponte*. Having concluded that the decision at issue is not void, we hold that any attack on its validity by reason of Ford's participation has been waived by reason of Peabody's failure to raise the issue. See *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 336, 399 N.E.2d 1322 (1980).

We now address the issue raised by Peabody; namely, whether the Commission's award of PTD benefits is against the manifest weight of the evidence. The following factual recitation is taken from the evidence adduced at the arbitration hearing.

On March 12, 1997, the claimant was working for Peabody as a coal miner. He suffered an injury to his lower back while lifting a spring from a haulage truck. The injury was diagnosed as a herniated disc at level L3-L4.

After having treated with several physicians, the claimant came under the care of Dr. Greg Loomis. On May 21, 1997, Dr. Loomis performed a right L3-L4 laminotomy, foraminotomy and microdiscectomy upon the claimant. The claimant was off work from the time of his injury through the date of the arbitration hearing on December 17, 2001.

The claimant's treating physician, Dr. Loomis, testified that he last saw the claimant on August 6, 1998. Dr. Loomis testified that, at that time, he "doubt[ed] very much that he would be able to return to any useful work." It was Dr. Loomis' opinion that, when he last saw the claimant, he was "100 percent disabled."

The claimant also introduced into evidence the notes of Dr. Linda R. Mishlove dated March 27, 1998, which were submitted in support of his claim for Social Security disability benefits. Dr. Mishlove noted that the claimant's ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking and traveling was "poor."

At the arbitration hearing, the claimant testified that he continued to have pain on the right side of his lower back and numbness in his right leg below the knee. He stated that his ability to lift is limited, and he is unable to bend or twist.

Dr. David Kennedy, a board-certified neurosurgeon, examined the claimant on September 1, 1998, at the request of Peabody. When deposed on January 31, 2001, Dr. Kennedy testified that his examination of the claimant revealed that his range of motion of the back was reduced about 50% in all planes, and leg raising reproduced and aggravated the pain in the claimant's right leg. Dr. Kennedy opined that the claimant was capable of doing sedentary jobs with alternating sitting and standing, lifting restricted to no more than 20 pounds, and only occasional bending and twisting.

The arbitrator found that the claimant met his burden of proving that he was permanently and totally disabled, and the Commission affirmed and adopted the finding. Peabody argues that the finding is against the manifest weight of the evidence. In support of the argument, Peabody relies upon the opinion of Dr. Kennedy and attacks the

credibility of the claimant and Dr. Loomis. Peabody notes that, on several occasions, Dr. Loomis reported that the claimant responded well to surgery. It also points out that the claimant missed 11 physical therapy sessions.

The extent of a claimant's disability is a question of fact to be determined by the Commission. *Oscar Mayer & Co. v. Industrial Comm'n*, 79 Ill. 2d 254, 256, 402 N.E.2d 607 (1980). The Commission's resolution of a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). That is to say, unless an opposite conclusion is clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ Based upon the record before us, we are unable to say that the Commission's finding of permanent total disability is against the manifest weight of the evidence. It was the function of the Commission to judge the credibility of the witnesses and resolve conflicts in the medical evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). The Commission obviously found the claimant credible and credited the opinion testimony of Dr. Loomis on the issue of permanency. We have no basis upon which to hold that no rational trier of fact could have agreed. See *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120, 675 N.E.2d 175 (1996).

■ Finally, the claimant argues that Peabody's present appeal is frivolous and warrants sanctions pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)). The claimant asserts that Peabody's manifest weight argument has been raised for the sole purpose of delay.

Although Peabody's arguments on appeal are not persuasive, they are not so lacking in legal or factual foundation as to merit sanctions. Consequently, we deny the claimant's motion for sanctions.

For the foregoing reasons, we: (1) affirm the judgment of the circuit court which confirmed the decision of the Commission; and (2) deny the claimant's motion for sanctions.

Affirmed.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLD-ENHERSH, JJ., concur.