2020 IL App (1st) 191164WC-U

Workers' Compensation
Commission Division
Order Filed: March 20, 2020

No. 1-19-1164WC

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LABOR NETWORK, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 L 050661 |
| | ) | |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.*, | ) | Honorable |
| | ) | James J. McGing, |
| (Maria Arizpe, Appellee). | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hudson, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirmed the circuit court's judgment confirming the Workers' Compensation Commission's decision finding that the claimant sustained repetitive trauma injuries that arose out of and in the course of his employment and awarding the claimant benefits under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2016)), over the employers argument that the Commission's decision is against the manifest weight of the evidence.

¶ 2    Labor Network, Inc. (Labor) appeals from an order of the circuit court of Cook County that confirmed a decision of the Illinois Workers' Compensation Commission (Commission), which found that the claimant, Maria Arizpe, sustained repetitive trauma injuries that arose out of and in the course of her employment and awarded her benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2016)), including temporary total disability (TTD) benefits, and also ordered it to pay certain specified medical expenses incurred by the claimant and to pay for prospective medical care in the form of surgery on the claimant's right elbow as recommended by her treating physician. For the reasons that follow, we affirm.

¶ 3    The following recitation of the facts relevant to a disposition of this appeal is taken from the evidence adduced at the arbitration hearing held on November 16, 2017.

¶ 4    The claimant testified that she began working for Labor, an employment agency, in July 2015. Labor assigned her to work at Cloverhill Bakery (Cloverhill), where she worked 12-hour shifts on a packing line. She spent half of each shift assembling boxes and the other half packing bread into boxes. The claimant testified to the manner in which she assembled boxes and that she was required to assemble 250 boxes every 10 minutes.

¶ 5    According to the claimant, she began experiencing right elbow pain about one month prior to April 20, 2016. She stated that box assembly caused her the most pain during that period. On April 20, 2016, the claimant was required to perform "double the work" on the packing line due to the worker to her left falling asleep. As a result, she began to experience markedly increased pain in her right elbow.

¶ 6    On April 22, 2016, the claimant presented at Physicians Immediate Care, complaining of constant pain in her right forearm that had worsened on April 20, 2016. The claimant was seen by

Jack Enter, a physician's assistant. The claimant was examined and x-rays were taken of her right arm. The claimant was diagnosed as suffering from lateral epicondylitis in her right elbow. She received an injection of lidocaine, was prescribed pain medication, and released to perform full-duty work.

¶ 7     The claimant returned to Physicians Immediate Care on April 27, 2016, complaining of worsening right elbow pain. During that visit, the claimant was seen by Dr. Pooja Menon. Following his examination of the claimant, Dr. Menon gave her a sleeve for her right elbow and placed her on work restrictions of limited repetitive motion of her right hand and arm. Dr. Menon also recommended that the claimant undergo physical therapy twice weekly for a period of four weeks.

¶ 8     The claimant testified that Cloverhill accommodated her work restrictions and assigned her left-handed work sorting bread. The work required her to apply pressure on the bottom of her left wrist, and extend her left thumb, index finger, and middle finger in order to open the plastic packaging. She stated that, as a result of working with her left hand, she began to experience pain in her left hand and arm.

¶ 9     On May 6, 2016, the claimant began physical therapy at AthletiCo. The evaluating therapist, Daniel Honan, noted a history of a right elbow injury beginning on April 21, 2016. He also noted that the claimant denied any past right elbow problems.

¶ 10     On May 7, 2016, the claimant presented at Physicians Immediate Care, complaining of pain in her right elbow, left hand, left shoulder, and the left side of her neck. The claimant also complained of pain and tenderness between her right thumb and index finger and in the right lateral area of her neck. The claimant was seen by Dr. Joseph Shanahan, who recommended that she

remain on left-handed work with the use of a splint and a 5-pound lifting restriction.

¶ 11    The claimant continued working subject to the new restrictions while wearing a brace on her right hand. Athletico's records reflect that, as of May 12, 2016, the claimant was working 12-hour shifts.

¶ 12    The claimant returned to Physicians Immediate Care on May 13, 2016, where she was examined by Dr. Menon. In his notes of that visit, Dr. Menon recorded the following history: "pain in R elbow improved but now with pain of L shoulder and L forearm/wrist. First noticed pain approx. 6 days ago – started because she was using her L arm more. + Dull ache, tingling of L forearm and pain in L shoulder with excessive use." During his examination of the claimant's left arm, Dr. Menon noted tenderness in her lateral epicondyle, the distal aspect of her left forearm, and the lateral aspect of her left wrist. Dr. Menon also noted a positive Finkelstein test. Dr. Menon dispensed a wrist extension control splint and recommended that the claimant undergo physical therapy for her left wrist and shoulder. In addition, Dr. Menon modified the claimant's work restrictions as follows: no strong gripping and repetitive motion with either hand and no lifting of more than 15 pounds with either arm.

¶ 13    According to the claimant, she returned to her original work duties on May 13, 2016. On May 16, 2016, the claimant began physical therapy at AthletiCo for her left wrist and shoulder. She testified that the physical therapy did not alleviate her pain.

¶ 14    On May 20, 2016, the claimant sought treatment from Dr. Darrel Saldanha. The notes of that visit state the claimant complained of pain in her neck, arms, elbows, and left wrist and numbness in both hands. After his physical examination of the claimant, Dr. Saldanha noted a positive Phalen's test on the right, positive Tinel's sign bilaterally, tenderness over the medial and

lateral epicondyle, and increased pain in the right elbow with wrist extension. Dr. Saldanha found "multiple pain generators after overuse injury during work-related activities." He diagnosed the claimant as suffering from epicondylitis, bilateral carpal tunnel syndrome, cervicalgia, and cervical radiculitis. Dr. Saldanha recommended that the claimant have an MRI of her cervical spine and an EMG of her upper extremities. He also recommended that she receive physical therapy. Dr. Saldanha referred the claimant to an orthopedic specialist for evaluation of both arms.

¶ 15 On May 26, 2016, the claimant began physical therapy at New Life Medical Center. Her therapy consisted of chiropractic treatments two times per week for six weeks.

¶ 16 On May 27, 2016, the claimant underwent an upper extremity EMG/NCV. The test revealed cervical radiculopathy at C6 and C7 on the left and at C6 on the right. According to the report, the findings were "highly suggestive of peripheral axonal neuropathy affecting the right and left forearms, median, ulnar and radial sensory nerves." Also on May 27, 2016, the claimant had an MRI scan of her cervical spine that revealed 1 to 2 mm annular disc bulges at C5-C6 and C6-C7.

¶ 17 On referral from Dr. Saldanha, the claimant was seen on June 1, 2016, by Dr. Gregory G. Markarian at Orthopedic Associates of Naperville. The claimant reported an acute onset of right elbow and shoulder pain on April 20, 2016, while performing a "double" workload on a bread line. She also reported that, about one month later, she developed acute pain in her left hand, wrist, and shoulder while performing left-handed work. Following his examination of the claimant, Dr. Markarian diagnosed her as suffering from right rotator cuff and bicipital tendinitis, lateral epicondylitis of the right elbow, left AC joint arthritis, left rotator cuff and bicipital tendinitis, and left De Quervain's tenosynovitis. Dr. Markarian ordered x-rays and MRI scans of the claimant's

shoulders and her right elbow. The claimant was prescribed a left thumb spica splint and instructed to remain off of work.

¶ 18    On June 8, 2016, the claimant was seen by Dr. Saldanha for a follow-up visit. Following his examination of the claimant and a review of her cervical spine MRI, Dr. Saldanha recommended that the claimant receive a cervical epidural steroid injection.

¶ 19    On June 24, 2016, Dr. Thomas Pontinen administered the recommended injection. When the claimant next saw Dr. Saldanha on June 29, 2016, she reported a reduction in her pain following the injection. Dr. Saldanha recommended that the claimant have an additional cervical epidural steroid injection.

¶ 20    On referral from Dr. Saldanha, the claimant began physical therapy at Physical Therapy Providers on June 22, 2016. According to the claimant, the physical therapy did not alleviate her pain. The records of Physical Therapy Providers state that the claimant "demonstrated minimal improvement in cervical mobility and bilateral grip strength" and that she continues to experience pain throughout all movement.

¶ 21    On June 30, 2016, the claimant had MRI scans of her left elbow and both shoulders. Dr. George Kuritza of Edgebrook Radiology interpreted the scans of the claimant's shoulders as revealing "rotator cuff tendonitis and/or bursitis involving the distal supraspinatus tendon." He interpreted the MRI scan of the claimant's left elbow as showing post-traumatic epicondylitis.

¶ 22    The claimant was seen by Dr. Markarian on July 13, 2016. Based upon the results of the claimant's MRI scans, Dr. Markarian recommended physical therapy and conservative treatment modalities. He directed the claimant to remain off of work.

¶ 23    On July 15, 2016, Dr. Pontinen gave the claimant a second cervical epidural steroid

injection. However, when the claimant saw Dr. Saldanha on August 3, 2016, she reported that she experienced no improvement in her pain symptoms following the injection. On examination, Dr. Saldanha noted that the claimant experienced pain with neck movement, causing radicular pain down her right upper extremity. He also noted positive Tinel's signs, bilaterally. Dr. Saldanha referred the claimant to Dr. Robert K. Erickson for a neurosurgical evaluation of her cervical spine, recommended that she continue physical therapy, and advised her to remain off of work.

¶ 24 On August 19, 2016, the claimant was seen by Dr. Thomas Poepping. In the notes of that visit, the doctor recorded a history of the claimant developing neck pain, as well as bilateral hand, wrist, and arm pain on April 20, 2016, secondary to her work duties. On examination, Dr. Poepping noted tenderness over the claimant's lateral epicondyle on the right, diffuse tenderness to palpation of both wrists, positive Tinel's and Phalen's testing bilaterally, and tenderness over the medial epicondyle on the left. After examining the claimant and reviewing her shoulder MRI's and EMG, Dr. Poepping recommended that the claimant have an MRI scan of her right elbow and referred her to a neurologist for an evaluation of her cervical spine. He also recommended that she remain off of work.

¶ 25 On September 7, 2016, the claimant had an MRI scan of her right elbow. Dr. Kuritza of Edgebrook Radiology interpreted the scan as revealing some post-traumatic soft tissue bruising.

¶ 26 Also on September 7, 2016, the claimant was seen by Dr. Erickson for an evaluation of her cervical spine. The history contained in the notes of that visit reflect that the claimant reported an injury to her right elbow along with neck pain as a result of her work duties. On examination, Dr. Erickson noted that the claimant's neck extension was restricted and that her left wrist was stiff and tender. He recommended that the claimant undergo upper extremity SSEP testing.

¶ 27    On September 16, 2016, the claimant underwent SSEP testing as recommended by Dr. Erickson. The tests revealed moderate delays present at the C6 and C7 nerve roots on the left side that, according to Dr. Erickson, correlated with the claimant's "perceived paresthesia, which predominate on the left side and include all fingers." Dr. Erickson recommended conservative treatment for the claimant's neck pain, including home traction and physical therapy. He also instructed the claimant to remain off of work.

¶ 28    When the claimant next saw Dr. Poepping on October 17, 2016, he reviewed the MRI scan of her right elbow. He noted some "partial-thickness tearing of the common extensor tendon at the lateral epicondyle." Dr. Poepping administered a lidocaine injection and instructed the claimant to remain off of work.

¶ 29    The claimant was seen by Dr. Pontinen on November 2, 2016, complaining of pain in her neck, shoulders, elbows, and wrists. Dr. Pontinen prescribed medication, recommended continued physical therapy, and advised the claimant to remain off of work.

¶ 30    When the claimant saw Dr. Poepping on November 14, 2016, she reported that the lidocaine injection had not alleviated her pain. Finding that the claimant had maximized conservative care without any lasting pain relief, Dr. Poepping recommended surgery.

¶ 31    On December 14, 2016, Dr. Erickson noted that the claimant reported an increase in neck pain and numbness in all of the fingers on her left hand. On examination, he noted diminished grip strength in the claimant's left hand. His review of the claimant's cervical MRI disclosed that the claimant might need an anterior cervical discectomy and a fusion from C5 through C7.

¶ 32    Dr. Poepping's notes of December 19, 2016, state that the claimant's bilateral elbow symptoms were worsening. He recommended that the claimant remain off of work.

¶ 33    The claimant next saw Dr. Poepping on January 30, 2017. On examination, Dr. Poepping noted that the claimant was tender all over the lateral epicondyle of the right elbow. He again recommended surgery.

¶ 34    Also on January 30, 2017, the claimant was examined by Dr. Michael D. Kornblatt at Labor's request. Dr. Kornblatt was engaged to evaluate the claimant's shoulder, right elbow, and cervical spine. He noted the claimant's complaints of constant neck aching, right elbow and shoulder pain, right arm numbness, and, to a lesser extent, left elbow and shoulder pain. Dr. Kornblatt noted that, on examination of her cervical spine, the claimant exhibited diffuse tenderness with palpation of all cervical spinous processes, a functional range of motion in all directions, and negative Lhermitte and Spurling's signs. On bilateral shoulder examination, he noted diffuse tenderness with palpation of both shoulders, a moderate limited active range of motion, and a 5/5 muscle testing. His examination of the claimant's right elbow revealed diffuse hyperesthesia with light palpation, including the olecranon process, triceps insertion, lateral and medial epicondyles, and medial and lateral muscle wads of the forearm. Dr. Kornblatt found tenderness over the lateral epicondyle of the claimant's left elbow without tenderness, posteriorly or medially, or masses. He found 5/5 strength and a full range of motion. According to Dr. Kornblatt's report of that examination, the claimant's diagnoses are consistent with cervical, bilateral shoulder, and elbow myofascial pain. Dr. Kornblatt noted that his examination of the claimant failed to reveal any objective abnormalities. He described the claimant's MRI reports as "atraumatic in nature and inconsistent with specific pathology referable to the cervical spine, bilateral shoulders and bilateral elbows." According to Dr. Kornblatt, the claimant's medical records are "cursory" and "inconsistent with a traumatic event but consistent with myofascial pain

complaints." He opined that the claimant does not require any formal care and recommended self-care exercises. Dr. Kornblatt was also of the opinion that the claimant was capable of unrestricted full-time work. When deposed, Dr. Kornblatt testified that the claimant's pain complaints are not related to injuries while working. He opined that the claimant's complaints are myofascial and related to everyday working and walking. He stated that the claimant's treatment should have been limited to strength training exercises and over-the-counter medications. He testified that the claimant has no permanent impairments and does not require any work restrictions. According to Dr. Kornblatt, his examination of the claimant lasted from ten to fifteen minutes. The claimant testified that the examination lasted five minutes.

¶ 35    When the claimant saw Dr. Erickson on April 12, 2017, she reported no improvement in her pain symptoms. On examination, Dr. Erickson noted that the claimant had limited neck extension and poor grip strength in her left hand. As of that date, Dr. Erickson recommended that the claimant have an anterior cervical discectomy and a fusion from C5 to C7.

¶ 36    During the arbitration hearing, the claimant testified that she continues to suffer from arm pain that is preventing her from working. She stated that she wants to have the right elbow surgery recommended by Dr. Poepping.

¶ 37    Following the arbitration hearing held on November 16, 2017, pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2016)), the arbitrator issued a written opinion on December 29, 2017. The arbitrator found the claimant's testimony to be detailed, believable, and unrebutted. She found that the claimant sustained an injury on April 20, 2016, superimposed on repetitive trauma injuries to her right elbow that arose out of and in the course of her employment by Labor. The arbitrator also found that the claimant sustained repetitive trauma injuries to her neck,

shoulders, and left elbow due to overuse of her left hand beginning in May 2016. However, the arbitrator found that the claimant failed to establish a causal connection between her low back condition of ill-being and her employment. The arbitrator awarded the claimant 73 1/7 weeks of TTD benefits for the periods from June 1, 2016, through July 13, 2016, less two days during which the claimant worked during this period, and from August 3, 2016, through November 16, 2017. The arbitrator ordered Labor to pay certain specified reasonable and necessary medical expenses incurred by the claimant and to pay for prospective medical care in the form of surgery to the claimant's right elbow as recommended by her treating physician.

¶ 38    Labor filed a petition for review of the arbitrator's decision before the Commission. On September 7, 2018, the Commission issued a unanimous decision affirming and adopting the arbitrator's decision.

¶ 39    Labor sought a judicial review of the Commission's decision in the circuit court of Cook County. On May 3, 2019, the circuit court confirmed the Commission's decision, and this appeal followed.

¶ 40    Labor argues that the Commission's finding that the claimant sustained an injury to her right elbow on April 20, 2016, arising out of and in the course of her employment is against the manifest weight of the evidence. According to Labor, the claimant "failed to meet her burden and prove by a preponderance of the evidence that she sustained an injury to her right elbow which arose out of and in the course of her employment." We disagree.

¶ 41    The question of whether an employee suffered an accidental injury that arose out of and in the course of her employment is a question of fact for the Commission. *Urban v. Industrial Comm'n*, 34 Ill. 2d 159, 161 (1966). The Commission's determination on a question of fact will

not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992). Put another way, the Commission's determination on a question of fact is against the manifest weight of the evidence when no rational trier of fact could have agreed. *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120 (1996). Whether a reviewing court might reach the same conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 42    The claimant testified that she spent half of each 12-hour shift assembling boxes. She was required to assemble 250 boxes every 10 minutes. The claimant stated that she began experiencing right elbow pain about one month prior to April 20, 2016. Box assembly caused her the most pain during that period. She testified that, on April 20, 2016, she was required to perform "double the work" on the packing line due to the fact that the worker to her left was falling asleep, and as a result, she began to experience markedly increased pain in her right elbow. The Commission found the claimant's testimony to be "believable, and unrebutted."

¶ 43    The record reflects that the claimant worked her full shift on April 21, 2016. However, on April 22, 2016, she was sent by her employer to Physicians Immediate Care where she complained of constant pain in her right forearm that had worsened on April 20, 2016. The claimant was diagnosed as suffering from lateral epicondylitis in her right elbow. On April 27, 2016, Dr. Menon of Physicians Immediate Care restricted the claimant's work to limited repetitive motion of the right hand and arm. The claimant testified that Cloverhill accommodated her work restrictions and

assigned her left-handed work sorting bread. She stated that, as a result of working with her left hand, she began to experience pain in her left hand and arm. Dr. Menon's notes of May 13, 2016, state that the claimant reported experiencing pain in her left shoulder, forearm, and wrist that began about 6 days earlier with excessive use of her left hand. When Dr. Saldanha examined the claimant on May 20, 2016, he found "multiple pain generators after overuse injury during work-related activities."

¶ 44    Dr. Kornblatt found the claimant's symptoms to be "inconsistent with a traumatic event but consistent with myofascial pain complaints." He opined that the claimant's pain complaints are not related to injuries sustained while working. However, the Commission found that Dr. Kornblatt's opinions were neither well supported nor persuasive. It was the function of the Commission to resolve conflicts in the evidence, including medical testimony; assess the credibility of the witnesses; assign weight to the evidence; and draw reasonable inferences from the evidence. *ABF Freight System v. Illinois Workers' Compensation Commission*, 2015 IL App (1st) 141306WC, ¶ 19.

¶ 45    The Commission adopted the arbitrator's findings that: (1) the claimant sustained an injury on April 20, 2016, superimposed on repetitive trauma injuries to her right elbow that arose out of and in the course of her employment, and (2) she also sustained repetitive trauma injuries to her neck, shoulders, and left elbow due to overuse of her left hand. Based upon the record, we are unable to find that the Commission's findings in this regard are against the manifest weight of the evidence.

¶ 46    Labor next argues that the claimant failed to prove that her current condition of right-elbow ill-being is causally related to her work accident, and as a consequence, the Commission's award of prospective medical care in the form of right elbow surgery is against the manifest weight of

the evidence. In support of its arguments in this regard, Labor relies upon Dr. Kornblatt's opinions and Dr. Kuritza's interpretation of the MRI of the claimant's right elbow taken on September 7, 2016, as revealing some post-traumatic soft tissue bruising. According to Labor, at most, the claimant suffered a right elbow strain that had healed by the time she was examined by Dr. Kornblatt. It argues that Dr. Poepping's opinion that the claimant required surgery is "inherently suspect" as the partial-thickness tearing of the common extensor tendon at the lateral epicondyle that he diagnosed after reviewing the MRI scan of the claimant's right elbow is not supported by Dr. Kuritza's interpretation of the MRI.

¶ 47    As noted earlier, the Commission found Dr. Kornblatt's opinions to be unpersuasive. As to the seeming conflict between Dr. Kuritza's and Dr. Poepping's interpretations of the MRI scan of the claimant's right elbow, Labor is asking this court to substitute its judgment for that of the Commission on matters of credibility and weight of the evidence. This we decline to do. *ABF Freight System*, 2015 IL App (1st) 141306WC, ¶ 19.

¶ 48    The records of the claimant's treating physicians, including Dr. Poepping, lead us to conclude that the Commission's finding that the claimant's current condition of right elbow ill-being and its award of prospective medical care in the form of right elbow surgery is not against the manifest weight of the evidence.

¶ 49    Finally, Labor argues both that the Commission's award of medical expenses and its award of TTD benefits are against the manifest weight of the evidence. Labor's arguments are premised on its contentions that the claimant failed to prove either that she sustained an injury that arose out of and in the course of her employment or that a causal connection exists between her employment and her condition of ill-being. Having rejected both underlying contentions, we also reject Labor's arguments

addressed to the Commission's awards of medical expenses and TTD for the same reasons.

¶ 50    For the reasons stated, we affirm the judgment of the circuit court that confirmed the Commission's decision and remand the matter to the Commission.

¶ 51    Affirmed and remanded.